## Stephen Walrath v. Donald Campbell.

*Replevin: Damages: Lien: Value: Appraisal: Evidence.* In an action of replevin a defendant whose lien under a chattel mortgage upon the goods replevied is sustained, cannot, in any event, recover beyond the value of the goods; and in the absence of any proof of such value, the appraisal made under the writ will govern.

*Official character: Evidence.* Parol evidence is admissible to prove the official character of trustees of a religious society, where the only proof required is, that they are officers *de facto.*

*Statute construed: Evidence: Religious societies: Mortgages.* Under our statute (*Comp. L.,* § *3062*) authorizing trustees of religious societies in certain cases to mortgage, etc., real estate of the society upon the vote of two-thirds of those present at any meeting duly and specially called for that purpose, the notice of the meeting, as well as the action taken, or any vote or direction given at the meeting, must be proved by the written notice itself, and the record of the meeting, and not by parol. This statute does not apply to a mortgage of personal property; but the power to mortgage that to secure their debts, is one which is incident to the existence of the corporation.

*Name: Identity.* The execution of a mortgage upon the property of the First Orthodox Congregational Society of Middleville, in the name of "The Trustees of the Orthodox Congregational Church of Middleville," is not such a misnomer as to invalidate the mortgage, where the identity of the society intended is clearly proved; the great object of a corporate name, like that of an individual, is to identify the corporation, which may be known by several names, as well as a natural person; and parol evidence of identity is admissible.

*Mortgage: Consideration: Fraud: Evidence: Case made: Practice.* Proof assailing such a mortgage, that at the time of its execution it was talked over among the trustees that the plaintiff had just recovered a large judgment against the society, and was about to take out execution under which all the property of the society would be seized unless they took steps to forestall such action by giving mortgages, and that in pursuance of this purpose the mortgage in question was given, as well as others, does not of itself render the mortgage void; this is strong evidence of fraud, but on a case made this court cannot weigh evidence, or determine the facts.

*Consideration: Evidence: Order of proof.* The objection to the admission of the mortgage in evidence, that no consideration had been proved, concerned only the order of proof; but if there was no proof of consideration in the case, either before or after the introduction of the mortgage, the judgment below, sustaining the mortgage, cannot be upheld.

*Mortgage: Consideration: Pastor: Salary: Services: Quantum meruit: Evidence.* The mortgage in question was claimed to have been given in consideration of the services of the mortgagee as pastor; but there was no evidence that the salary had been fixed as required by the statute (*Comp. L.,* 3071); the only evidence there was on the subject tended only to prove a hiring by two of the trustees as individuals, and no ratification by the society, of their action, was shown; and the fact of his having officiated as pastor, under such circumstances, without objection from the congregation, would not raise an implied promise to pay the reasonable value of the services; and if it would, there was no proof of such value; and the evidence therefore did not tend to prove any consideration for the mortgage.

*Heard July 16.        Decided October 14.*

Case made from Barry Circuit.

This was an action of replevin, brought by Walrath against Campbell, for one reed organ, certain carpeting, chairs, stove and pipe, one stand, and one bureau, which the plaintiff had purchased upon a sale made on an execution issued upon a judgment in his favor, against the trustees of First Orthodox Congregational Society, of Middleville, Barry county, Michigan.

The case was tried before the court without a jury. The plaintiff proved that this property was the property of said society, and in its possession in its church building, at the time of the levy and sale; that plaintiff immediately took possession of the same, and removed it to his house in

Middleville, and that the defendant afterwards re-took it from the plaintiff's house, in the absence of the plaintiff, and without his assent. It also appeared that the plaintiff executed a replevin bond in this suit, and that the property was thereupon delivered to him, and, by the appraisal annexed to the return, it appeared that the property was appraised at one hundred and seven dollars and ten cents. But no other evidence was offered on the trial, by either party, of the value of the property.

The defendant claimed under a chattel mortgage executed to him Aug. 5th, 1872, a few weeks prior to the levy, by "The Trustees of the Orthodox Congregational Church of Middleville," purporting to convey to him all said property (described as being in the church edifice of the parties of the first part) and conditioned for the payment of two hundred and eight dollars within nine months of the date, with a provision that "if the parties of the first part shall sell, assign, or dispose of the whole or any part of said goods and chattels, or move or attempt to remove the same from the church, without the written assent of said Campbell," then he might enter upon the premises, or any place where the goods might be, take possession and sell the same, retaining sufficient to pay said two hundred and eight dollars and interest and charges, returning the surplus, if any. The attestation clause to this mortgage, was as follows:

"In witness whereof the parties of the first part have hereunto set their hands and seals, the day and year first above written.

ALBERT D. BADCOCK, [ L. S. ]

CHARLES McQUEEN, [ L. S. ]

ARCHIBALD McQUEEN, [ L. S. ]

*Trustees of the Congregational Church of Middleville.*

The defendant proved from the county records a certificate, dated on the 17th September, 1859, of the organization of "The First Orthodox Congregational Society of Middleville, Barry county, Michigan," by which it appeared

28 MICH.—15.

that C. G. Hill, D. S. Burgher, W. C. Pratt, A. A. Meade, and G. S. Pratt, were duly elected, on that day, as the trustees of said society; and he then offered to prove by defendant and other witnesses sworn for the defense, that Albert D. Badcock, Charles McQueen, Archibald McQueen, Elijah H. Waite, and William C. Pratt (the three former of whom executed the chattel mortgage in question), were the trustees of the said "First Orthodox Congregational Society of Middleville on the 5th of August" (when said mortgage was executed) "duly elected and qualified." This was objected to as inadmissible, on the ground that the record must be produced as the best evidence of the fact. This objection was overruled, and the evidence admitted. This is relied upon as error.

As preliminary to the introduction of the mortgage, and to show the consideration, its validity and good faith, the defendant was sworn in his own behalf, and testi-fied that he was the pastor of said Congregational Society of Middleville, and had been so since about the first of January, 1872; that he was employed to act in that capacity by Albert D. Badcock and Charles Mc-Queen in the said month of January, 1872; and that, for his services said Badcock and McQueen agreed to pay him a salary of seven hundred and twenty-five dollars per annum; that on the first day of August, 1872, there was due him upon his salary, about two hundred and seventy-five dollars, and that on three successive Sabbaths, in the month of July, 1872, he read to his congregation from the pulpit a notice of a meeting of the society, to be held on the first day of August. His counsel then asked him to state the contents of said notice, and the particular object for which such meeting was called; to which the counsel for plaintiff objected, on the ground that parol evidence was incompetent and inadmissible; that the written notice must be produced or its absence accounted for. This objection was overruled, and plaintiff excepted.

Defendant then testified that the notice so read by him

was a notice that a meeting of the society would be held on said first day of August, then next, for the purpose of making arrangements for the liquidation of the society's indebtedness. He further testified that a meeting of the society was held on said first day of August, and was attended by himself, and also by Charles McQueen, Archibald McQueen, Albert D. Badcock, William C. Pratt, and Elijah H. Waite, all of whom were trustees of said society; that it was then and there talked over by those persons, that the said Stephen Walrath (plaintiff) had just recovered a judgment in the circuit court for the county of Barry, against said society, for nearly one thousand dollars, and that an execution would probably be taken out upon such judgment, and all the property of the society seized and levied upon by the sheriff, unless they took steps to forestall such action by giving mortgages upon all such property.

The witness was then asked by the counsel, what directions, if any, the meeting gave to the trustees as to giving mortgages upon the property of the society; to which question the plaintiff's counsel objected, on the ground that it was not competent to prove by parol the transactions of such meeting; that they were necessarily a matter of record, and could only be proved by the records. This objection was overruled, and the plaintiff excepted.

Defendant thereupon testified that the persons composing such meeting directed the trustees of the society to execute a mortgage to him, for the sum of two hundred and eight dollars, upon the personal property of said society; also two mortgages upon the real estate of said society, one for three hundred and fifty dollars, to the Boston Congregational Union, to secure it for moneys advanced, and one for about two thousand five hundred dollars, to Charles McQueen, one of said society's trustees; but that no arrangement was made for securing or liquidating the plaintiff's demand; that such mortgages were afterwards, on the 5th of August, 1872, executed by said trustees and delivered to the respective mortgagees; that witness, on the 9th of August,

delivered the mortgage given to him to the township clerk.

Defendant next proved the filing of the mortgage with the clerk, and then offered the mortgage in evidence; to which the plaintiff's counsel objected, on the grounds: 1st. That it was not proved that the parties who made and executed the mortgage ever had any title to the property described in it, or any right to mortgage the same; that said paper, if a mortgage, was only the mortgage of the persons who signed it, and not of the trustees of "The First Orthodox Congregational Society of Middleville, Barry county, Michigan;" 2d. That no such society or corporation as "The Trustees of the Orthodox Congregational Church of Middleville, Michigan," had been shown to exist; 3d. That the statutes of this state regulating the organization and incorporation of religious societies, do not confer upon such societies the right or power to give mortgages upon personal property; and, 4th. That it was not proved that there was any indebtedness from said First Orthodox Congregational society to the defendant, because it was not shown that the society or congregation had ever employed him as its pastor, or agreed to pay him any salary.

The plaintiff's objections were overruled, and the mortgage admitted in evidence, and the plaintiff's counsel excepted.

Upon this evidence the case was submitted to the circuit judge, who determined that the plaintiff, by his purchase at the execution sale, became the general owner of the property, but that defendant, by his chattel mortgage, had a special interest in, or lien upon it; that plaintiff should take nothing by his suit, and that defendant recover against the plaintiff the said sum of two hundred and eight dollars for the amount of his special property, with costs, etc. The plaintiff brings the cause up on case made after judgment.

*Harvey Wright,* for plaintiff.

*Norris & Blair,* for defendant.

CHRISTIANCY, CH. J.

It is hardly necessary to say, that as the defendant could not in any event be entitled to recover beyond the value of the property, and there was no evidence of its value except that furnished by the appraisal made under and returned with the writ of replevin, which was only $107 10, the allowance of the amount of $208 (because that was the amount of defendant's lien) was clearly erroneous. Upon the hypothesis that the defendant was entitled to recover at all, his recovery should have been limited to the value as shown by the appraisal.

But, there being no other evidence upon the point, we think this appraisal was *prima facie* evidence of the value, and if the defendant was entitled to recover at all, he was entitled to recover to the amount of the appraisal; upon this point the case comes within the principle of our decision in *Worthington v. Hanna, 23 Mich., 530.*

Should this be the only error, this being a case made, we might correct this error by merely reducing the judgment to its proper amount.

But there are several other questions raised which we proceed to consider.

We see no error in the admission of parol evidence to prove the official character of the persons mentioned as trustees at the time the mortgage was executed. It was sufficient *prima facie* proof to show that the persons named were acting trustees or such officers *de facto* of the society, which would furnish the presumption that they were so *de jure;* and for this purpose parol evidence was clearly admissible.—*Cahill v. Kalamazoo Mutual Ins. Co., 2 Doug. (Mich.), 124; Druse v. Wheeler, 22 Mich., 439.* The testimony was, that they were such trustees at the time, and the evidence further shows that they acted as such, and this evidence was uncontroverted. And if the defendant was allowed to go further, and to show by parol their actual election and qualification as such (which, when necessary

to be shown at all, might be required to be shown by the record), parol proof of such facts could in no way prejudice the plaintiff, since those facts were unnecessary to be proved by the defense, the official character of the trustees named being sufficiently shown without the objectionable evidence.

The next objection is to the parol proof of the contents of the written notice of a meeting of the society for the first of August, which the defendant testified he read to his congregation on three successive Sabbaths in the month of July, and showing the object for which such meeting was called. And in connection with this, may also be considered the question arising upon the objection to the proof by parol evidence of "what directions the meeting gave to the trustees, as to giving mortgages upon the property of the society."

The object of introducing the evidence upon both these points, so far as we can judge from the case, seems to have been to show the power of the trustees to execute the mortgage under which the defendant claimed, for which purpose it seems to have been thought necessary to show that the trustees gave the mortgage in pursuance, and with the vote or directions, of a meeting of the society, duly notified for the purpose.

To authorize the trustees to execute a mortgage of real estate (and there were such mortgages executed by them on the same occasion), it would have been necessary under *section 3062, Compiled Laws,* as amended in 1869 (*Sess. L. 1869, p. 67*), that they should have " the assent of two-thirds of the voters present at a meeting of the society, duly and specially called for the purpose;" and in such case, and so far as such meeting and such vote, or the consent of the society was necessary to the giving of the present mortgage, the notice of such meeting, as well as its action, or any vote or direction it may have given, must have been proved by the best evidence, the written notice itself, and the record of the meeting, or the loss or inability

to procure the written notice or record, must have been shown before secondary evidence could have been given of its contents. This certainly would be clearly so of the contents of the record, and I think equally of the contents of the notice; as the written notice was not one delivered over to the parties receiving it, but merely read by, and therefore (in the absence of evidence to the contrary) to be presumed to have remained in the possession of, the defendant, who is seeking to prove the notice to establish a claim of right in himself. Its non-production, therefore, and a resort to secondary evidence, are open to the same suspicion as parol evidence in ordinary cases where the fact sought to be proved is the contents of a written instrument.

But the provision of the statute requiring a vote of the society at a special meeting called for the purpose, does not apply to a mortgage or sale of personal property. The statute, it is true, grants express power to sell or mortgage real estate, in pursuance of a vote at a meeting thus called, and is silent as to the power to sell or mortgage personal property; and for this reason, and because the amendment of the same section in 1861 (*Sess. L. 1861, p. 228*), which first gave to religious societies express power to execute mortgages, authorized the trustees to execute mortgages upon any of their property, extended the power only to the securing of liabilities incurred in the erection or repair of their churches, meeting houses and other buildings, and the act of 1867 (*Sess. L. 1867, p. 100*) amending the same section, only added to this the right to execute such mortgages upon the property of the society to secure the payment of liabilities for the purchase of sites for such buildings, and the section, as amended in 1869 (first above cited), only extends the power to real estate,—the plaintiff's counsel therefore infers and insists that the trustees, under this statute, had no power to execute a mortgage upon the personal property of the society.

But we think there is no sufficient ground for such an inference. The power to mortgage or sell real estate of

such religious societies, for many peculiar reasons, might have been a doubtful one without some enabling statute; but that the trustees, who in fact constitute the corporation, would, without an enabling statute, have the right to sell an organ, a chair, stove, or carpet, which they might happen to own and wish to dispose of, can hardly admit of a doubt; and generally the power to sell includes the more limited power to mortgage. And we think the power to execute a mortgage upon their personal property, to secure their debts, is one which is incident to the existence of a corporation, and that it requires some express or clearly implied prohibition by the legislature to take it away.—*Angell & Ames on Corp.*, §§ *187, 191, and authorities cited; 2 Kent's Com., 280.*

It was usual in England to restrain both the power of acquisition, and the power of sale of ecclesiastical corporations, and a similar policy has been adopted in some of the American states in reference to the real estate of such corporations; and certain restrictions of this kind will be found in our own statutes.

But these restrictions are confined to real estate; and our statute furnishes no clear intimation of any intention to limit the power of such corporations to sell or mortgage their personal property. As a common-law incident, therefore, of their corporate existence, we must hold that they have the power.

No meeting or directions of the society, therefore, being necessary to give the trustees power to execute this mortgage, if in other respects valid, the error upon this particular point, in admitting the evidence, could not in any way prejudice the plaintiff; though, if admitted for the purpose of having the further effect to show an employment or hiring, or a ratification of the hiring of the defendant, as pastor, by the congregation, it would have been erroneous, and the action of the meeting cannot therefore be considered as in proof for this purpose.

As to plaintiff's objection that it was not proved that

the parties who executed the mortgage ever had any title to the property, or right to mortgage the same, and that if a mortgage, it was only that of the parties whose names were signed to it, we infer from the argument that this is intended to be based upon, and claimed to follow as a consequence from, the misnomer of the corporation insisted upon under the next point, and that it was not intended to refer to the mere form of execution. The property was shown by the plaintiff's evidence to be the property of "The First Orthodox Congregational Society of Middleville." But the mortgage purports on its face to be given by "The trustees of the Orthodox Congregational Church of Middleville," and it is insisted that this is an entire misnomer, and we are naturally to infer that there are two corporations, one of each name, at Middleville.

It is not necessary to say what might have been the result upon this point, had there been no proof of identity. No great exactness, it is true, was observed by the trustees in describing the corporation by the exact corporate name given in the certificate. In the body of the instrument they describe themselves as "The trustees of the Orthodox Congregational Church of Middleville," but, in signing, they leave out the word "Orthodox." But all understand these religious societies authorized by the statute are what are usually and properly enough known as churches.

The plaintiff's counsel himself makes quite as great a mistake, and quite as essential a misnomer, when he assumes, as he does in his brief, that it is the "society" which constitutes the corporation; whereas, the statute makes the *trustees* constitute the corporation.—*Comp. L. 1871*, §§ *3059, 3060, 3061.* The fact that the name, as given by the certificate, would, when applied to the statute, make the true corporate name "The trustees of the First Orthodox Congregational Society," etc., might, under evidence that there were two Congregational churches at Middleville, render the name given in the mortgage (which omits the term "First") doubtful, and perhaps, without evidence

23 MICH.—16.

showing that there were two Congregational churches there, evidence might be required to show the identity.  But the great object of a corporate name, like that of an individual, is to identify the corporation, and it may be known by several names, as well as a natural person; and when the variance from the exact designation given by the statute is no greater than it is here, I can see no good reason to doubt the propriety of parol evidence tending to identify the corporation whose organization was shown by the certificate, with that which executed the mortgage.—*Angell & Ames on Corp.*, §§ *99, 234, and cases cited.*

Here such evidence was given, wholly uncontradicted, as placed the identity beyond question.  It was proved by the parol evidence, to which, as we have seen, there was no good legal objection, that the three persons who, as trustees, executed the mortgage, with two others named, " were " (I quote from the record) " the trustees of said First Orthodox Congregational Society of Middleville," etc.  It was that corporation against which the plaintiff had obtained his judgment; and it is for the attempt which his counsel claims the evidence shows, to evade the payment of this judgment, that the chattel mortgage was void.  In short, the whole case shows, beyond all reasonable question, the identity of the corporation.  The court must so have found, to give the judgment he did.  He was asked for no special finding, and no exception was consequently taken to that conclusion, except what was taken on other grounds, to some of the evidence tending to prove it, and this, as we have seen, was not well taken.

The mortgage was therefore properly admitted in evidence.

It was talked over (as the defendant testifies) among the trustees, in his presence, that the plaintiff " had just recovered a judgment against the society for nearly a thousand dollars" (evidently alluding to the judgment upon which plaintiff's execution issued), "and that an execution would probably soon be taken out upon such judgment;" [the

evidence shows it was issued on the 16th of September following] ; " and all of the property of the society seized and levied upon by the sheriff, unless they took steps to forestall such action by giving mortgages upon all of such property." And it was further shown that in pursuance of this expressed purpose, this mortgage, and two mortgages amounting to two thousand eight hundred dollars upon the real estate of the society, were executed on the 5th of August. And the plaintiff contends that this, *per se*, rendered the mortgage void. Doubtless it was very strong evidence tending to show fraud; and this point might well have been urged before the circuit judge on the trial. But this was, after all, only *evidence* of fraud; and we cannot, upon a case made, weigh evidence, or determine the facts.

But we may, nevertheless, upon this case made, be compelled to arrive at the same result as if the mortgage had been expressly found by the circuit judge to be fraudulent; for, if we can see from the case as made, that there was *no evidence* tending to support any particular point essential to sustain a judgment for the defendant, it is our duty to reverse the judgment.

The point was taken against the admission of the mortgage, that it was not proven that there was any indebtedness of said society to the defendant; because it was not shown that the society had ever employed him as its pastor, or agreed to pay him any salary.

This objection was not good against the introduction of the mortgage, because that might have been followed up by the proof of the employment, and agreement of the society to pay the salary. But the question arises here, whether there was any such proof, either before or after the introduction of the mortgage. If not, there was no proof of the consideration for the mortgage, and the question then arises, whether the mortgage, or (which is the same thing) any judgment for the defendant, could be sustained. The defendant's evidence tended to show that the

mortgage was given to secure him for the amount due him
on what he calls his salary.     The statute (*Comp. L.*, §
*3071*) provides:  "Nothing in this act contained shall be
construed to give such trustees the power to fix or ascer-
tain the salary or compensation to be paid any minister
or priest, curate, rector, or parson, but the same shall be
ascertained and fixed by a majority of such society, entitled
to vote at the elections of trustees."     Pastor is but another
name for minister or parson.     I have been unable to find
any evidence tending to show that defendant's salary was
thus fixed, or that the society or its voters had ever agreed
to pay him any sum or compensation whatever.     The
defendant's own testimony is all there is upon this question,
and it is peculiar; he says "he was employed to act in
that capacity" [pastor] "by Albert D. Badcock and Charles
McQueen, and that for his services said Badcock and Mc-
queen agreed to pay him a salary of seven hundred and
twenty-five dollars per annum."     He does not say, nor does
his language, taken together, fairly imply, that he was
hired by them, or his salary fixed, or that they agreed to
pay, *as trustees ;* and as all the trustees together had no
such power, and if they possessed it, it would require at
least a majority to fix the salary, the inference is quite
strong that these two individuals did not undertake to hire
him, or fix his salary, in their capacity of trustees, with the
intention of binding the society.     It is by no means an
unprecedented thing for individuals to hire and pay a sal-
ary to a minister without calling upon the church or con-
gregation for aid.

   Nor is there any evidence tending to show that the
society ever ratified this agreement of Badcock and Charles
McQueen to pay this or any salary or compensation.     And
it may be doubted whether there would be any such evi-
dence, if the notice of the meeting, and the transactions of
the meeting alluded to on the first of August, had been
properly in evidence; but, as already stated, this notice, and
the proceedings of the meeting, were not properly in evi-

dence. And if it be said that it might be inferred, from the evidence of his having officiated as pastor without objection from the congregation, that they ought to pay him what his services were reasonably worth, it may be replied that this would not be so if Badcock and McQueen had hired him on their own account, and not on that of the society; and that, at all events, there is no evidence of the reasonable value of his services, or whether they were worth any thing. No consideration for the mortgage is therefore shown. And as the mortgagee distinctly swears that it was made with the expressed design of hindering Walrath from collecting his debt by execution, it must be considered a fraud against him, until shown to be otherwise by proof of such consideration. As no such evidence was given, the defendant failed to establish any claim to the property, and the judgment must be reversed, and a judgment entered in this court for the plaintiff in replevin for the recovery of the property, with his costs in both courts.

The other Justices concurred.