THE GRATWICK, SMITH & FRYER LUMBER COMPANY v. THE VILLAGE OF OSCODA.

*Municipal corporations—Taxes—Assessment roll—Renewal of warrant—Evidence—Action to recover tax paid—Overvaluation of property.*

1. A village council has power under How. Stat. § 2937 (which provides that the president of the village may renew the warrant to the assessment roll from time to time, by order of the council, and for such time as the council shall direct), to order such renewal on the day after the expiration of the time to which the warrant has been renewed, and within the week limited by How. Stat. § 2941, during which it is the duty of the marshal to make his return to the village treasurer, the warrant and roll being in his hands at the time the latter order of renewal is made.

2. Where under the order of the village council directing the renewal of the warrant to the assessment roll to November 7, 1890, the president of the village, by mistake, inserts October

| | |
|---|---|
| 97 | 221 |
| 97 | 501 |
| 97 | 221 |
| 99 | 530 |
| 97 | 221 |
| 101 | 258 |
| 97 | 231 |
| 104 | 346 |
| 97 | 221 |
| 117 | 487 |
| 97 | 221 |
| d127 | 340 |
| 97 | 221 |
| 157 | 306 |

7, 1890, in his order of renewal, the village may, in a suit brought to recover taxes paid under protest, show by the proceedings of the council the time to which the renewal was in fact made.

3. A mill and the adjoining lumber, in the actual occupancy and possession of a corporation, is properly assessed to it, and the tax levied by virtue of such assessment is not void because the corporation is designated on the assessment roll, in the column headed "Owner or Occupant," by the initial letters of its corporate name.[1]

4. A tax-payer in a village, who appears before the board of review and has a hearing upon his objections to the amount of his assessment, cannot, in a suit to recover the tax, which he paid under protest, raise the objection that the assessor failed to require the tax-payers to make sworn statements of their taxable property, as provided by the general tax law of the State; it appearing that the act under which the assessment was made does not require the assessor to provide himself with blanks for that purpose, nor that they shall be furnished him by the Auditor General or county treasurer, and it not appearing that the plaintiff was in any way injured by the failure of the assessor to require such statements to be made.[2]

5. The court is held to have left the question fully to the jury to determine whether there was or was not an overvaluation of plaintiff's property by the assessing officer and board of review for the purpose of taxation, and to have directed the jury in that regard substantially as requested by plaintiff's counsel.[3]

Error to Iosco.   (Simpson, J.)   Argued April 7, 1893. Decided October 27, 1893.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

---

[1] For cases bearing upon the question of the effect of assessing property without the name of the owner, or in the name of any person other than the owner, see *Bradley v. Bouchard*, 85 Mich. 18, and cases there cited.

[2] See *Turner v. Circuit Judge*, 95 Mich. 1, holding that the provision of the tax law of 1891, making it the duty of supervisors to require tax-payers to make and verify statements of their taxable property, is mandatory, and is sufficiently complied with by mailing to them, as far as known to the supervisors, blank statements, with a notice to appear and verify the same.

[3] See *Township of Caledonia v. Rose*, 94 Mich. 216, as to the jurisdiction of the board of review, under the general tax law, over the question whether or not an assessment is excessive.

*McDonell & Hall* (*Forrest & M'Cutcheon*, of counsel), for appellant.

*C. S. Pierce* (*Hatch & Cooley*, of counsel), for defendant.

LONG, J. This action is brought to recover the amount of certain taxes paid by the plaintiff to the marshal of the village of Oscoda under protest. The taxes were assessed in the year 1890.

The plaintiff is a corporation engaged in the manufacture of lumber, lath, etc., in the village of Oscoda. The village assessor assessed the plaintiff's mill at the sum of $110,000, and its personal property at $225,000. The plaintiff, feeling aggrieved at the assessment, appeared before the board of review, and asked to have the amount reduced, claiming that the amount fixed was largely in excess of the value of the property. When the tax became due, the marshal made a levy upon the personal property of the plaintiff, claiming the sum of $1,675. To release the property, the plaintiff paid the tax under protest. The general tax amounted to $1,340, and the highway tax to $335. On the trial in the court below the jury rendered a verdict in favor of the defendant. Plaintiff brings error.

The plaintiff asked an instruction to the jury that they find a verdict in its favor, contending that it was entitled to this request for the reasons:

1. That the warrant attached to the roll expired August 27, and was not renewed during its life.

2. That the president of the village failed to renew the warrant, as directed by the council on October 14.

3. That the taxes were not assessed to the plaintiff, as required by section 2929, How. Stat., and therefore there was no power to seize its property:

4. That the council failed to certify the roll to the assessor, and that the assessor failed to require the taxpayers to make sworn statements, as required by sections 12 and 14 of the tax law of 1889.

5. That the meeting of the council on May 26, at which the taxes were voted, was not a regular one, and that but three members of the board, besides the president *pro tem.*, were present; that the same infirmity affected the meetings of July 21, September 29, and October 13; that the meeting of October 13 is not shown by the record to have assembled at the proper hour, that it did not adjourn to a time certain, and that the adjourned meeting of October 14 did not assemble until 15 minutes after the hour for meeting; and that at none of said meetings was a full board in attendance. In addition, it was insisted that the meeting of August 28 was not lawfully called.

1. The record shows that the first warrant to the tax roll bears date June 9, 1890, and commands the marshal to pay all taxes collected to the treasurer of said village by the 28th of July of that year. On the 21st of July the council authorized the president to renew the warrant "for 30 days from the 28th day of this month" (*i. e.,* July). On the 27th of July the president attached the following to the roll and warrant, and signed it:

"Pursuant to the order of the council of the village of Oscoda, the time for the collection of taxes on the within roll is hereby extended to August 28, 1890."

On the 28th of August the council again empowered the president to extend the time for the collection of taxes on the village roll for the period of 35 days from that date, and on the same day the president annexed to the roll the following order:

"Pursuant to an order of the council of the village of Oscoda, the time for the collection of taxes on the within roll is hereby extended for the period of 35 days from August 28, 1890."

How. Stat. § 2937, provides:

"The president may renew said warrant from time to time, by order of the council, and for such time as the council shall direct."

Our attention is called to the case of *Phillips v. Town-*

*ship of New Buffalo*, 68 Mich. 217, not only as authority
for the contention that the warrant had expired by limi-
tation, but also to support the claim that the council had
no power to make an order on the 28th authorizing the
president to extend the time for the collection of the tax.
In that case it was said:

"It is a sound rule of construction that legislation is to
have a prospective operation only, except where the con-
trary intent is expressly declared, or is necessarily to be
implied from the terms employed."

In the present case the order made by the council had
direct reference to the tax roll and warrant in the hands
of the marshal, and ordered the same extended.    The
statute conferred power upon the council to make this
order, and there is no limitation in the statute that the
order shall be made within the life-time of the warrant, or
on its last day of limitation, or the day succeeding the
time of its expiration.   Section 2941 provides for the return
of the warrant and tax roll within one week after the
expiration of the time limited in the warrant for the col-
lection of the taxes levied in said roll, or within one week
after the time to which said warrant may have been renewed
or extended; so that the village marshal properly had the
tax roll and warrant in his hands for the collection of this
tax up to and including the last hour of the 27th of August.
On the 28th the council directed the president to renew it,
the tax roll and warrant being still in the hands of the
village marshal.   I find no restriction in the statute upon
the council's making the order directing renewal even on
the 28th, and counsel cite no case holding that under this
or a similar statute the council would have no power to
make the extension.   We think, also, that the further order
made by the president was in substantial compliance with
the direction of the council.   In the case of *Phillips v.*

*Township of New Buffalo, supra,* an attempt was made to revive a warrant 25 days after its expiration. This was sought to be done under Act No. 8, Laws of 1885, extending the time for the collection of taxes in certain counties; and it was held that the act was prospective, and had no relation to tax warrants that had expired by limitation. In the present case, the action of the council had direct reference to the 'warrant then in the hands of the village marshal.

2. October 14 the council resolved:

"That the village president be, and is hereby, ordered to renew and extend the warrant bearing date June 9, 1890, for the collection of village taxes, to and including the 7th day of November, 1890."

All the trustees were present and voted for this resolution, the president alone being absent. On the next day, October 15, the president attached to the roll and signed the following:

"Pursuant to a resolution of the Oscoda village council, passed at the adjourned meeting held on Tuesday evening, October 14, 1890, the warrant for the collection of taxes, bearing date June 9, 1890, hereto annexed, is hereby renewed to and including the 7th day of October, A. D. 1890."

It is claimed that this error of the president in reciting in his order the "7th day of October," instead of the "7th day of November," as directed by the council, is a fatal error, and that the tax warrant was thereby made invalid, as no extension, in fact, was made. In this counsel are in error. If the suit were against the officer, there might be some force in this contention, as the warrant, upon its face, might not be a protection, and it would be doubtful whether he could go behind the warrant to show extension by the records of the council; but the action is in *assumpsit* against the municipality, and involves the question

whether the municipality has money in its hands which equitably belongs to the plaintiff.

" When a municipal corporation is sued for money collected and paid over to it as a tax, the idea on which the suit is predicated is that the corporation has received that which in justice it ought not to retain.    A suit will not, therefore, lie to recover back taxes paid, when the only complaint that can be made of them is that the proceedings, in their levy and collection, have been irregular. The fact of irregularity does not establish injustice; there must be something further in the case which either exempts the party from the tax altogether, or which, because of illegality or inequality, deprived the officers of jurisdiction. Municipalities do not guarantee to their people correct action on the part of their officers, and, if they did, no one would be entitled to rely upon the guaranty until he was injured.    Irregular action does not necessarily injure the parties concerned; and, where it does, the remedies given by review or appeal are supposed to afford full redress. Any further remedy must proceed upon the idea that the tax is void,—a mere nullity." Cooley, Tax'n (2d ed.), 808.

It follows, therefore, that the defendant had the right to go back of the warrant, to the proceedings of the council, and from such proceedings ascertain the time to which the extension was made.

3. Section 2929 provides that the assessor of the village shall in each year, and within the time required by the general laws of this State for the assessment of property in townships, make an assessment roll; containing a description of all the real property and the aggregate amount of all personal property liable under the laws of the State to taxation in the village, and the name of the owner, agent, or person liable to pay taxes therein, if known, and the names of all persons liable to pay a poll tax in the village; and shall set down in such roll the valuation of such property at its true cash value, placing the value of the real and personal property in separate columns; and in so doing he shall conform to and be governed by the provisions of

law governing the action of supervisors of townships performing like services, unless otherwise in said act provided.

It appears from the copy of the tax roll returned here that, in the column " Name of Owner or Occupant," the plaintiff was designated as " G., S. & F. L. Co." Counsel claim that this is not a sufficient designation of the name of the owner or occupant, and that the tax is therefore void. They cite, in support of this claim, *Hill v. Warrell,* 87 Mich. 140. But in that case it appeared that no person was in the possession or occupancy of the property when some portion of it was assessed to George H. and William E. Hill, while George H. Hill was the actual owner. The city charter provided in that case that non-resident lands should be assessed as such, and entered upon a part of the roll separate from that upon which resident property was entered. It was said that when the owner resided in the city, if the premises were unoccupied, his name could be entered and the assessment made to him among the resident owners of property; but it appeared in that case that the persons assessed were non-residents of the State. Other portions of the property were assessed to persons who were neither owners nor occupants. It was therefore held in that case that the assessment was improperly made, and improperly entered upon the assessment roll, the statute being held mandatory in that respect. In the present case, the plaintiff was in the actual occupancy of the mill and the lumber adjoining it. It was therefore proper to assess the property to the owner or occupant.

It is said that the designation of the plaintiff by the initial letters of the corporate name solely, and not by its full corporate name, was not a designation of the plaintiff by name as the owner or occupant. The designation of the owner or occupant is for the purpose of identification; and there is no question in the present case but that the initial letters used did designate the plaintiff in its cor-

porate name.   A corporation, like an individual, may be
known by several names, and parol evidence of its identity
is always admissible.   *Walrath v. Campbell*, 28 Mich. 111.
The tax was not rendered illegal and void by reason of
this omission.

4. While the general tax law of 1889 required the
Auditor General to furnish to county treasurers blanks for
statements, and also county treasurers to furnish the same
to supervisors, there is no provision in the act (No. 245,
Laws of 1879) under which these taxes were assessed
requiring the village assessor to provide himself with such
blanks for the purpose of village assessment, nor requiring
the Auditor General or county treasurer to furnish them.
Neither does it appear that the plaintiff was in any way
injured by the failure to furnish such blanks.   Not being
satisfied with the amount assessed, it appeared before the
board, and there had a hearing.   We think the objection
cannot now be heard to set aside the whole tax levy.

5. The points made under this head we need not con-
sider, and the objections must be overruled, as we think
the record fairly shows that the meetings at which the
tax was voted were legally held, and the tax legally
assessed.

- The principal contention in the court below seems to
have been that the assessor and board of review willfully
refused to assess the property at its true cash value, and
considerable testimony was given by the plaintiff in support
of it, which the defendant sought to rebut by its testi-
mony.   At the close of the testimony, plaintiff's counsel
requested the court to charge the jury as follows:

*Third request.*   "If you shall find that the assessment
of $110,000 upon block 16 of plaintiff's property by the
board of review was an overvaluation, and was not made
on the basis of fixing its cash value, that is, the usual
selling price of such property in the village of Oscoda on
the second Monday of April. 1890, being the price that

could be obtained therefor at private sale, and not at forced or auction sale, the tax assessed against the same is void, and plaintiff is entitled to recover the tax paid thereon, with interest at 6 per cent. from October 22, 1890."

*Fifth request.* "Inasmuch as the plaintiff appeared before the board of review, and protested against the assessment on block 16, plaintiff is entitled to recover the tax spread against it, if you find that the board overvalued the same contrary to its best judgment and information, unless you find that all assessments in the village were equally overvalued; and, if you find that said block was so overvalued, it devolves upon the defendant to show that all other property on the roll was equally overvalued, and it is not necessary in this that any fraud on the part of the board shall be found by the jury."

*Eighth request.* "The board, in fixing the value of said block, would have no right to take into consideration the fact that the plaintiff had a large body of timber at a distance, which might or might not be sawed by the mill situate on said block. In fixing the value of the same, you must disassociate the idea of the timber from the mill itself."

The third request to charge was substantially given in full by the court below, the court explaining, in connection with it, that the word "willfully" (which he incorporated) meant stubbornly, obstinately, by design, or with a dishonest purpose; and in that connection the court further charged the jury that "if the board would not be governed by reason in fixing the value of block 16, but was inflexible in the purpose to overvalue the same, the tax against the same is void." The court further said that the owner of property or the agent of the owner was not to be discredited as a witness by the board merely by the fact of such ownership or agency; and that the plaintiff was not called upon to prove this willful overvaluation, if such had been made, by more than a preponderance of testimony. The court further directed the jury:

"Counsel for the defendant have argued to you that, before the taxes against block 16 can be set aside, you must find that the board of review fraudulently overvalued the

same, and, in doing it, it was their purpose to fix a value upon it beyond its true cash value, and not overvaluation arising from an honest mistake as to its value. That is true; but I charge you that if you find that the board of review, in fixing said valuation, did not fix the same on the basis of determining the usual selling price of the same in the village of Oscoda on the day of assessment, being the price that could be obtained therefor at private sale, and not at forced or auction sale, then said assessment is void as a matter of law, and the question as to whether it acted honestly in this matter is not material."

In the further charge the court left the question fully to the jury to determine whether there was or was not an overvaluation of the property by the assessing officer and the board of review for the purpose of taxation. Substantially, the court directed the jury as requested by plaintiff's counsel.

Several other errors are assigned and points made in plaintiff's brief, which we have carefully examined, but do not think them of sufficient importance to notice. The case seems to have been fairly tried and submitted to the jury.

Judgment is affirmed.

The other Justices concurred.