THE UNITED STATES *v.* COLEGROVE.

STATUTORY CONSTRUCTION ; MAIL CONTRACTORS.

1. In a case of doubt involving the construction of a statute, the construction given to the statute by an Executive Department, and long adhered to, will be given great weight.

2. The Postmaster-General has the right, under the Act of Congress of May 4, 1882 (22 Stat. 54), to withhold payments due a mail contractor on one route and apply them to the settlement of claims of sub-contractors and carriers on other routes let to the same contractor.

No. 519.   Submitted January 22, 1896.   Decided March 24, 1896.

HEARING on an appeal by the United States from a judgment overruling a demurrer to a plea to a declaration in a suit on a mail contractor's bond.  *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment against the United States in a suit on a mail contractor's bond.

The declaration, which was filed June 24, 1895, alleged the execution by James B. Colegrove, as principal, and his co-defendants, as sureties, of a bond in the sum of $300 to secure the faithful performance of a contract by said Colegrove for carrying the mail, from July 1, 1893, to June 30, 1897, on a postal route between Glen Hope and Irvona, in the State of Pennsylvania, at the rate of $96 per annum, payable quarterly. The breach of the contract alleged is the failure of the contractor to carry the mail on said route since July 1, 1894.

The defendants filed a plea, in which, after admitting the execution of the bond, and the payment by the United States of the quarterly payments due to and including December 31, 1893, they say: " But the defendants say that the amount of $24, which became payable upon said contract for each of the two quarters ending respectively March 31, 1894, and June 30, 1894, aggregating $48, was withheld from said defendant Colegrove by order of the Postmaster-General, in accordance with the construction uniformly given to the act of Congress of May 4, 1882, since the passage of said act, relating to claims against mail contractors or subcontractors by carriers for carrying the mails, and was paid to subcontractors and carriers who had filed their contracts and claims in the Postoffice Department for carrying the mails for said defendant Colegrove upon divers and sundry other mail routes in the State of Pennsylvania, not mentioned in the bond in the declaration set forth, on which said Colegrove was and is contractor, and who had furnished evidence of the performance of service in the

quarter ending December 31, 1893, and prior thereto, for which service said defendant Colegrove had been paid under his contracts therefor, and more than two months having expired after the quarter in which such service was performed; and this the defendants are ready to verify. Wherefore, they pray judgment if the said plaintiffs ought to have or maintain the said action thereupon against them."

The plaintiffs demurred to this plea, and the same having been overruled, declined to plead over, whereupon judgment was rendered for the defendants.

*Mr. John L. Thomas*, Assistant Attorney-General for the Postoffice Department, and *Mr. Chas. H. Armes*, Assistant U. S. Attorney for the District of Columbia, for the appellants.

*Messrs. Shellabarger & Wilson* and *Mr. James H. Ellsworth* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

The question raised by the demurrer turns upon the construction to be given the act of Congress of May 4, 1882 (22 Stat. U. S. 54).

That act was passed as a section of the general appropriation bill to cure, as is claimed, certain defects in former laws applying to the relations between contractors and their subcontractors and carriers. The appropriation for inland transportation by "star routes" of $7,250,000, is followed by five general provisos or clauses under that designation. The first three of these are unimportant in this connection, as they provide merely for the substitution of subcontractors for the contractors, under certain circumstances. The remaining provisos read as follows : " *And provided further*, That if any person shall hereafter perform any service for any contractor or subcontractor in carrying the mail, he shall, upon filing in the Department his contract for such service and satisfactory evidence of its performance, there-

after have a lien on any money due such contractor or subcontractor for such service to the amount of the same, and if such contractor or subcontractor shall fail to pay the party or parties who have performed service as aforesaid, the amount due for such service within two months after the expiration of the quarter in which such service shall have been performed, the Postmaster-General may cause the amount due to be paid said party or parties and charged to the contractor : *Provided,* That such payment shall not in any case exceed the rate of pay per annum of the contractor or subcontractor : *And provided further*, That where any person, corporation, or partnership shall have contracts for the performance of mail service upon more than one route, and any failure to perform the service according to contract on any one or more of such routes shall occur, no payment shall be made for service on any of the routes under contract with such person, corporation, or partnership until such failure has been removed and all penalties therefor fully satisfied."

It appears from the defendants' plea that Colegrove was a successful bidder, at the same letting, upon some other routes, and had entered into contracts therefor.    But the Government is charged with the breach of the contract, as to the route in controversy, through withholding from the contractor money earned thereon, and paying the same out to subcontractors and carriers upon other routes that had been let to him.    This was done by the order of the Postmaster-General, as admitted in the plea, " in accordance with the construction uniformly given to the act of Congress of May 4, 1882, since the passage of said act, relating to claims against mail contractors, or subcontractors by carriers for carrying the mails."

It does not seem necessary to pursue, to final determination, the question that has been ably argued on both sides, viz : Whether the terms of the fourth and fifth provisos give subcontractors and carriers a lien upon all money due the contractor upon all of his routes, or only upon that earned

on the particular routes upon which their services shall have been performed. If it was necessary to decide that question we would be inclined to hold that the lien expressly provided for each carrier is confined to the sums due for carriage on his own route only. As it is not necessary in our view of the case we will not consume time with its discussion.

It seems also that, as between the claims of the carriers themselves, this is the construction of the Postoffice Department, for it is said on its behalf: "In no case does the Postmaster-General withdraw money from one route to pay for service on another until all claims on file for service on the former have been met and paid."

The substantial question of the case is this: Whether, taking the provisions quoted above, in connection with each other, the Postmaster-General was justified thereby in paying carriers, on another route, from the surplus accruing on this one?

The right to do so has been exercised under the uniform construction which, it is admitted, has been given the law since its passage. In case of doubt the construction of the Department, long adhered to, would have great weight; but independently thereof we think it the correct one. Conceding that the express lien of the carrier is limited to the money earned upon his own route and no other, does not exhaust the purposes of the first clause; for, after giving the lien, it is provided that in case of failure to pay the same within two months after the expiration of the quarter in which the services shall have been performed, "the Postmaster-General may cause the amount due to be paid said party or parties and charged to the contractor." Although there follows a proviso, that such payment "shall not in any case exceed the rate of pay per annum of the contractor or subcontractor," there is no limitation confining the payment to the fund due the contractor on the particular route. If the amount to be paid the carrier could not be taken from money due the contractor on any other

route, where was the necessity of the proviso that in no case should the payment exceed the rate of pay of the contractor, as well as the subcontractor, in case there should be one between the carrier and the contractor?

That proviso would seem to have been added to the bill pending the final proviso, or in contemplation of it ; because it is not only consistent with it, but also important to the protection of the Government under its operation, as we shall show later.

The object of the whole law was, primarily, to protect the Government, and, incidentally, the interests of carriers. The Government was given an advantage it had not enjoyed before, and of which experience had demonstrated the necessity, in the case of contractors for many separate routes. By keeping one general account with such a contractor, penalties could be assessed for dereliction of one route contract, and for negligent performance of others, and all could be summarily collected, by retention, as long as any balance remained due the contractor on his contract, as a whole, without resort to proceedings upon his several bonds. Thus, by the power given to re-let to a subcontractor on any one route, to retain for the actual carriage upon others, to deduct from money due on all contracts for penalties assessed, and by the limited power to pay therefrom also for actual services of carriage rendered, the protection of the Government was as ample as it could well be made. In this view the importance of the limitation, as intimated above, in the special proviso to the fourth clause, becomes manifest. It might occur that one general contractor would secure many good contracts and some bad ones. On particular routes he might be compelled to pay more than his contract price to secure performance. In such cases the lien of the carrier, as well as the right to retain for his payment, is limited to the sum due the contractor. Beyond that he must look to other remedies for his protection. To pay the excess out of other contracts might conflict with the special liens of the carriers thereon, as well as pro-

D. C.]                    Opinion of the Court.

duce loss to the Government ; hence the limitation in the proviso.

No injury can be done thereby to the particular subcontractor or carrier. He undertakes the work with knowledge of the situation, and if he fails to secure himself by contract, beyond the lien given him by the law, it is his own fault.

In the case suggested, where the Government shall have paid the contractor on a route before notice of a carrier's special lien, his equity is recognized and provided for, as far as practicable, in the power given to retain for his payment from the surplus funds due the contractor upon any or all of his contracts. Such being the object and effect of the several provisions of the law, they must be considered as read into the contract to secure the performance of which the bond was given. Hence the sureties are concluded thereby equally with the principal contractor.

It follows, therefore, that the contract has not been violated by the retention of the money due thereunder, as set forth in the plea, nor has the contingent liability of the sureties been changed, or rendered more onerous.

*The judgment must be reversed, with costs to the appellants, and the cause remanded with direction to sustain the demurrer to the plea. It is so ordered.*

A motion for a rehearing was made and overruled.