W. A. McCallum et al., Appellants, v. Board of Review, Appellee.

**TAXATION**:    Assessment—Imposing Penalty—Conditions Precedent.
1    A 100 per cent penalty (Sec. 1357, Code, 1897). may not be validly imposed on an assessment, unless it appears that the assessor, or his deputy, *at a time when he was armed with the official books, rolls and papers on which he could enter a valid assessment in full compliance with law*, was met, on demand, with a refusal of the property owner, (a) to assist in the listing of his property, or (b) to take and subscribe the official oath to the correctness of said list.    So held where the deputy assessor called at the property owner's place of business, with nothing in his possession but a mere memorandum book used by him in jotting down information for future use in making assessments.

**TAXATION**:    Assessment—Power of Assessor to Search Premises.
2    Principle recognized that an assessor is not armed with statutory authority to search the premises of a property owner, against his will, for the discovery of taxable property.

**TAXATION:   Assessment—Listing Property—Request for Time to Prepare List.** An assessor may not validly demand that the property owner list his property for assessment at *any* time which may suit the convenience of the assessor, and impose the 100 per cent penalty for failure to comply with such demand. Requests for reasonable time (within the limits of the time within which the assessment must be completed) in which to prepare the list, must be granted.

**TAXATION:   Assessment — Arbitrary Assessment with Penalty Added—Duty to Set Aside.** An assessment, purely arbitrary in the sense that it was made in utter disregard of the real value of the property, and to which a 100 per cent penalty was added, on the theory that the owner had refused to assist in listing his property, should have been set aside by the assessor, and an assessment made in the usual way, when, at a time when the assessment records were still under the control of the assessor, the property owner presented himself at the assessor's office and offered to submit to an assessment in such ordinary way.

**TAXATION:   Assessment—Imposing Penalty—Arbitrary Action of Assessor.** The action of an assessor in assuming to arbitrarily assess an accessible property owner, and adding a 100 per cent penalty on the theory of a refusal of the owner to assist in listing his property, and thrusting a duplicate assessment slip under the owner's locked door, all without any prior legal offer or attempt to assess the owner, reveals no element of an assessment or valid imposition of a penalty.

**TAXATION:   Assessors—Right of Deputy.** An assessment made by a deputy assessor and confirmed by the assessor is valid.

*Appeal from Polk District Court.*—Hubert Utterback, Judge.

Tuesday, November 21, 1916.

The plaintiff, having been assessed for the amount of $10,000 upon his taxable personal property, to which sum there was added the further amount of $10,000 by way of penalty, appealed therefrom to the city board of review. Upon the hearing of that appeal, the board reduced the assessed value of the property to $2,932, but added thereto the equal sum of $2,932 as penalty, and this modified assess-

ment was confirmed upon plaintiff's appeal to the district court. From that judgment, plaintiff appeals to this court. —*Reversed* and *Remanded.*

*Blake & Blake,* for appellants.

*H. W. Byers, E. C. Carlson, E. M. Steer, Guy A. Miller* and *Thomas Watters, Jr.,* for appellee.

Weaver, J.—The plaintiff's evidence tends to show that he came to Des Moines in the month of October, 1913, and opened a garage there for the handling and storing of auto-

1. TAXATION: assessment: imposing penalty: conditions precedent.

mobiles. The average of the stock permanently owned by him up to January, 1914, was about $2,932. Prior to the assessment, plaintiff had closed his shop for the remainder of the winter season. On February 13th, he had occasion to open and enter the shop for a temporary purpose. It was near night; and, just as he was about to leave upon an errand elsewhere, one Hanger, a deputy assessor, came in, and without at first announcing his business, went into the storeroom and made some observation of the stock. He then came to plaintiff and said he was assessing the property, or was there to assess it. Plaintiff told him that some of the cars were his own and some were the property of others in storage; that he did not have time to attend to the assessment then; and that, if the deputy would come back about the first of March, plaintiff would attend to the business with him. To this, Hanger demurred, saying he wished to attend to it then. Some heat was displayed by both parties, the plaintiff insisting that Hanger go away. The result of that interview was that Hanger left without making an assessment, though he had taken some memoranda. On the 30th of March following, plaintiff, having heard nothing more on the subject, went to the office of the chief assessor and informed the officer in charge that he was there to report his property for assessment. In answer to this proffer, he was told, "You are already

assessed $10,000 and $10,000 penalty;'' and, in explanation of the manner in which it was done, the assessor or deputy said that it had been noted on a slip and thrust under the door of plaintiff's shop.   When Hanger went to the shop on February 13th, he had no assessment book or roll or list.   He demanded no list from the plaintiff; did not ask him to be sworn or offer to put him under oath.   He carried what he calls a ''pick-up book,'' which we understand to have been a memorandum book in which he proposed to enter a list of the property found which was later to be formally assessed and entered upon the regular or permanent assessment book.   The evidence upon the part of the appellee differs from that of appellant principally on the question concerning the conversation with plaintiff, and as to the amount of force used by plaintiff in inducing him to leave the shop on February 13th. Hanger denies that plaintiff said he could not attend to the matter then, but would do so later, and says that, without any apparent reason, plaintiff would not listen to him, and forcibly thrust him out of the shop.   The only other witness present on the occasion corroborates the plaintiff's testimony, saying that plaintiff repeatedly told Hanger that he wanted to take a train and could not then spare the time for the assessment, but would do it later, and that Hanger declared he would not leave until he got ready, and persisted in remaining until the witness advised him to go.   It is conceded on the trial that plaintiff did go to the assessor's office in March and offered to list his property for assessment, and that this offer was refused.   Evidence was introduced and not denied that, on leaving the shop, Hanger reported the matter by telephone to the assessor's office, and received the instruction: ''You know what your duty is.   Assess him double.''   Later, it appears that a deputy was sent from the office for the purpose of seeing plaintiff, but returned, reporting that he found the shop door locked and was unable to locate the proprietor.   The deputy was then instructed to ''make an assessment of $10,000 with a penalty of $10,000

and shove the slip under the door.'' It was also shown to be a matter of frequent occurrence in the practice of the assessor's office that property owners would ask further time for the listing of their property, and that as a rule such requests were granted.

Upon this record, should the assessment, even as reduced by the trial court, be permitted to stand? We confess to a very strong conviction that, even upon the showing made by the appellee, the affirmance of the judgment below would work a palpable miscarriage of justice. An assessor has only such power or authority as is conferred upon him by statute, and, so far as the same is pertinent to this case, it is found in the following sections of the Code:

"Sec. 1352. Each assessor shall enter upon the discharge of the duties of his office immediately after the second Monday in January in each year, and shall, with the assistance of each person assessed, or who may be required by law to list property belonging to another, enter upon the assessment rolls furnished him for that purpose the several items of property required to be entered for assessment. He shall personally affix values to all property assessed by him.

"Sec. 1354. The assessor shall list every person in his township, and assess all the property, . . . therein, except such as is heretofore exempted or otherwise assessed, and any person who shall refuse to assist in making out a list of his property, . . . or who shall refuse to make the oath required by the next section, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined in a sum not to exceed five hundred dollars.

"Sec. 1355. The assessor shall administer the oath or affirmation printed on the assessment rolls hereinafter prescribed to each person assessed, and require the person taking such oath to subscribe the same, and in case anyone refuses so to do, he shall note the fact in the column of remarks opposite such person's name.

"Sec. 1356. The assessor shall, at the time of making the assessment, inform the person assessed, in writing, of the valuation put upon his property, and notify him, if he feels aggrieved, to appear before the board of review and show why the assessment should be changed.

"Sec. 1357. If any . . . person refuse to furnish the verified statements in this chapter required, or to list his property, or to take or subscribe the oath in this chapter required, the executive council, or assessor, as the case may be, shall proceed to list and assess such property according to the best information obtainable, and shall add to the taxable valuation one hundred per cent. thereof, which valuation and penalty shall be separately shown, and shall constitute the assessment; and if the valuation of such property shall be changed by any board of review, or on appeal therefrom, a like penalty shall be added to the valuation thus fixed."

Section 1360, Code Supp., 1913, prescribes in detail the form of the assessment roll, to be made in duplicate, with appropriate blanks and columns in which each item of taxable property of the individual to be assessed shall be entered, followed by a blank affidavit or oath, to be signed and verified by him. The duplicate of such assessment roll, when finished, is to be delivered to the person assessed.

Section 1365, Code, 1897, provides that the work of assessment shall be completed by the first day of April.

Section 1305, Code Supp., 1913, requires all property subject to taxation to be valued at its actual value, which shall be entered opposite each item, and be assessed at 25 per cent of such actual value. Such assessed value shall be entered in its proper column opposite each item, and is to be taken and considered as the taxable value of such property.

By Sec. 661, Code Supp., 1913, a city assessor is charged with the same duties as are by law required of township

assessors, and they may appoint such number of deputies as the city council may authorize.

As will be seen from the foregoing, the assessor is not armed with a statutory warrant to enter upon and search the premises of the person to be assessed, against his will, for the discovery of taxable property. He is doubtless authorized to take notice of such property as may come within his view without committing trespass. It is equally clear that he may call upon the owner either at his residence or at his place of business, or wherever he may be found within the city or township, for the purpose of making the assessment which the law requires; and, while he may not search the premises for that purpose, he may, and it is his duty to, search the owner's conscience by administering the required oath and demanding that he make the verified list or roll which the statute prescribes. The indicia of his authority to make such demands are the assessor's book and rolls supplied to him by the county auditor. Code Supp., 1913, Sec. 1360. What he is entitled to demand, upon the refusal of which he may proceed to make an assessment according to the best information obtainable and add the prescribed penalty, is the furnishing of "the verified statement in this chapter required," also the listing of the owner's property, and the taking or subscribing of "the oath in this chapter required." See Code Section 1357, above cited. The deputy in this instance had neither the assessment book nor the roll upon which to enter the assessed property, nor the written or printed oath to be administered, nor the duplicate which it was part of his duty to leave with the owner. While he says he informed plaintiff he was there to make an assessment, there is no evidence whatever that he demanded a list of the plaintiff's property, or that plaintiff assist him in making such list, or that, if plaintiff had expressed his readiness to do so, the deputy was prepared to make the list

2. TAXATION: assessment: power of assessor to search premises.

and assessment in the manner provided by law. On the con-trary, he shows he was not so prepared, and that the extent of his readiness was the possession of a memorandum, or "pick-up book," on which it may be presumed, as we have said, that he proposed to enter data from which a subsequent entry would be made in the official record, though he does not say so. No list or memorandum which the plaintiff might have prepared or offered the deputy would have answered the requirements of the law. To accomplish an assessment regularly, the assessor or his deputy is required to enter the list on the roll to which the property owner's verification is to be added. The duty of the owner is to "assist" in making this list by reporting and making true answers to proper questions concerning his taxable property, and not until the assessor or deputy has offered to perform his official duty, as above indicated, and has been met with refusal by the owner, is the latter chargeable with the penalty. It will be noted that the assessor has substantially three months in which to make the assessment of property in his jurisdiction. The law fixes no special date or dates within that limit on which the making of the rolls and valuations shall be attended to. The law evidently contemplates that the officer shall call upon the owner for the assist-ance and information desired, and to secure his personal verification of the list. In the nature of things, whether in the country or city, the average property owner cannot be expected to be at all hours or at every moment ready and prepared to give the necessary time, or to have immediately at hand all the data required to com-plete his assessment roll; and if, on being approached by the assessor, he asks for reasonable time within the limit of the period in which the assessment must be made, we think the assessor is not justified in refusing it and proceeding to assess the penalty provided by law.

3. TAXATION: as-sessment: list-ing property: request for time to prepare list.

Again, whatever may have been the merits of the con-

troversy between plaintiff and the deputy on February 13th, yet, when the plaintiff voluntarily went to the assessor's office and offered to submit to assessment in the regular manner, it was clearly an unwarranted assumption of authority on the part of the assessor to point him to the extravagant peremptory assessment of $10,000 and penalty of $10,000, and deny his demand for an assessment of his property in the usual manner. It is admitted in the record that this offer or request was made at the office of the assessor on the 30th or 31st of March, 1914. This was within the period within which the assessor still had control of the books and records relating to that year's assessments. The entry which had been made against the plaintiff was not a judgment, nor did it have the finality of a judgment. The plaintiff had not in fact been assessed. It is not pretended that the assessor or deputy had any information or reason to believe that plaintiff's goods were of a value of $10,000, or anywhere near it. On the contrary, the deputy himself says that, from the view he had of the contents of the shop on February 13th, he estimated the taxable property at about $3,100. This sum had been arbitarily tripled, and then doubled by way of penalty. Having, by the voluntary act of the plaintiff within proper time, been given opportunity to remedy the injustice, it should have been done. In the case of *Farmers' Loan & Trust Co. v. Town of Fonda,* 114 Iowa 728, the plaintiff had refused to list its property, and a penalty was assessed. We refused to disturb such assessment because, as we there said, the failure to properly list the property "could not be remedied by making return to the assessor after the books were closed and placed before the board of review." The clear implication of that holding was that, if the owner had appeared to the assessor while the books were still open and in his hands, the assessment should have been made as asked, and the penalty expunged. It may be true that plaintiff was unnecessarily brusque or unman-

4. TAXATION: assessment: arbitrary assessment with penalty added: duty to set aside.

nerly at the meeting between him and the deputy, and that the latter should not be blamed for feeling some degree of irritation over the manner in which he had been met; but the power of his office should not be employed as a means of evening up the score.

There is no claim that plaintiff was not in the city or was inaccessible to the assessor or his deputy during all the time from February 13th to April 1st, when the books were to be closed. The only attempt to approach plaintiff on the subject after the date first mentioned was the sending of a deputy to plaintiff's shop, and of the circumstances of that effort there is no evidence, except that the deputy, having reported finding the shop locked, was told to "assess him $10,000 and penalty $10,000, and stick the slip under the door." If, as we hold, the occurrence of February 13th did not amount to an offer or attempt to assess the plaintiff, within the meaning of the law, it follows for a still stronger reason that knocking at a locked door and thrusting a slip through the crack beneath was neither an assessment·nor a valid imposition of a penalty.

5. Taxation: assessment: imposing penalty: arbitrary action of assessor.

Counsel for appellants raise the further question whether, under the statute authorizing a penalty of 100 per cent of the taxable value of the property, the sum assessed in this case is not in any event four times the amount authorized by law, the "taxable value" of the property being, under our statute, but one fourth of the assessed value. Having reached the conclusion that no penalty in any amount is authorized in this case, the point made ceases to be of any importance, and we do not attempt any construction of the statute with reference thereto.

It is also argued for appellant that a deputy assessor is without authority to make an assessment. In the sense that he has no authority independent of the assessor, the objection may be correct; but we see no reason why he may not perform the functions of the office

6. Taxation: assessors: right of deputy.

of assessor, subject to the approval and confirmation of his principal; or, in other words, the assessor may avail himself of the assistance of his deputies, and adopt and return the results of their labor as his own. Otherwise, the authority given him by law to appoint deputies would be of little or no use. See, as bearing on this point, *Reed v. City of Cedar Rapids*, 138 Iowa 366. As the assessment in this case was evidently adopted and returned by the assessor, we think it cannot be held void merely because it was first entered by a deputy.

But, for the other reasons already stated, we find that, under the facts shown, neither the deputy nor the principal assessor had any authority to assess the penalty against the plaintiff, and that the trial court erred in sustaining and confirming it. We do not understand appellant to be resisting the assessment as fixed by the board of review, except the penalty, and for this reason we do not consider or decide the question whether a legal assessment of any kind was made. We may suggest the thought, however, that, even if the assessor failed to make a valid assessment of the property, it was probably within the province of the board of review to supply the omission. The judgment below is therefore reversed and cause remanded for such further proceedings as may be necessary to correct the assessment to conform with the views herein expressed.—*Reversed* and *Remanded*.

EVANS, C. J., DEEMER and PRESTON, JJ., concur.