(No. 18706.—

THE PEOPLE *ex rel.* George F. Harding, County Collector, Appellee, *vs.* THE SHERIDAN-BROMPTON AND ANNEX BUILDING CORPORATION, Appellant.

*Opinion filed October 25, 1928.*

JOHN W. ELLIS, and WILLIAM F. STRUCKMANN, for appellant.

ROBERT E. CROWE, State's Attorney, ROBERT C. O'CONNELL, and JAMES F. CLANCY, (HAYDEN N. BELL, of counsel,) for appellee.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

Upon application by the county collector of Cook county to the county court of that county for judgment and order of sale against real estate on which the general taxes for the year 1926 were delinquent, the Sheridan-Brompton and Annex Building Corporation, owner of an improved parcel

of real estate, objected that an increase in the valuation of its building, made in that year, was void. The objection was overruled, judgment and order of sale followed, and the objector prosecutes this appeal.

On the first day of April, 1923, appellant's land was vacant and the board of assessors fixed its value as of that day at $104,855. There was no change in the valuation of the land during the years 1924, 1925 and 1926. After the first day of April, 1924, a twelve-story co-operative apartment building was erected on the land. The board of assessors fixed the value of this improvement as of April 1, 1925, at $400,000. For the succeeding year the board of assessors, without notice to the owner, valued the building at $1,317,000. Shortly thereafter the city of Chicago by its corporation counsel, and the board of education of the city by its attorney, filed with the board of review a written complaint charging that the valuation placed upon appellant's property was too low. Upon a hearing of this complaint the board of review reduced the valuation of the building from $1,317,000 to $650,000. Appellant had no notice either of the filing of the complaint or of the hearing thereon. The figures given, in each instance, represent the full value, one-half of which is the assessed value.

After the county collector had established a *prima facie* case upon the hearing of the objection in the county court the appellant offered evidence to show that its building was completed on April 1, 1925. Appellant's president testified that tenants then occupied the building; that it had been completed and was in his charge on that day, and that its cost exceeded $1,000,000. An owner of one of the apartments testified that he moved into the building on March 20, 1925, and that other persons were then living in it. The architect's superintendent testified that tenants moved into the apartments on April 1, 1925; that it was necessary at the time to replace certain defective work and to repair parts of the interior which had been damaged

by tenants moving into the building; that certain changes, such as the removal of an arch or French doors, were made at the request of tenants after April 1, 1925, but that such changes did not constitute any part of the original plan or structure and that the average person would have considered the building completed on the first day of April, 1925.

The county collector offered in evidence a document taken from the files of the board of assessors for the year 1926. This document contained data concerning the building in question and was made in the process of fixing its valuation preliminary to the entry of the valuation on the assessment roll. Upon the face of the document there appeared the memorandum, "Re-assess, 1926," followed by the initials of a member of the board of assessors. An employee of that board testified that the memorandum indicated that the building had been assessed as an unfinished structure on April 1, 1925. There was no legal requirement that the document should be made or kept as a public record.

The county court sustained the valuation placed upon the building by the board of assessors for the year 1926, as reduced by the board of review, upon the theory that the valuation fixed for the year 1925 was upon an unfinished building, and hence that the board of assessors had the power and authority to re-assess the building in the succeeding year without notice to its owner.

Appellant contends that the re-valuation of the building in 1926 at $650,000, or $325,000 assessed value, is illegal to the extent that it exceeds $400,000, or $200,000 assessed value, fixed in 1925, because, first, if any additions were made after April 1, 1925, and were subject to assessment for the first time, they should have been separately valued; and second, no re-valuation of the building could have been made in 1926 without notice to the owner, the building having been completed and assessed as of April 1, 1925. Appellee, on the contrary, insists that the valuation for 1925 was upon an unfinished improvement; that the valuation

made in 1926 was the first assessment of the completed building, and for that reason notice to the owner of the re-assessment was unnecessary.

Section 9 of the Revenue act of 1898 (Cahill's Stat. 1927, p. 2125; Smith's Stat. 1927, p. 2301;) requires an assessment of all real property subject to taxation under the general revenue laws of the State, beginning in 1899 and in every fourth year thereafter, with reference to the amount owned on the first day of April of the year in which the assessment is made. This assessment is known as the general assessment, and, as modified, equalized or changed as provided by law, is the assessment upon which the taxes are levied and extended during the quadrennial period for which it is made. Section 12 of the same act, as amended in 1923, requires the assessor, before the first day of June of each year in which the general assessment is made, actually to view and determine, as nearly as practicable, the value of each tract or lot of land listed for taxation as of the first day of April of each year and assess it at the value required by law, setting down the sum in proper columns prepared therefor in duplicate books furnished him. The assessor is also required, between the first day of April and the first day of June in each intervening year, to "list and assess in like manner all real property which shall become taxable and which is not upon the general assessment, and also make and return a list of all new or added buildings, structures or other improvements of any kind, the value of which shall not have been previously added to or included in the valuation of the tract or lot on which such improvements have been erected or placed, specifying the tract or lot on which each of said improvements has been erected or placed, the kind of improvement and the value which, in his opinion, has been added to such tract or lot by the erection thereof." Section 14, as amended in 1905, provides: "On or before the first day of June in each year, other than the year of

the quadrennial assessment, the assessor shall determine the amount, in his opinion, of any change in the value of any tracts or lots of land by reason of any injury to, alteration in or addition to, the improvements thereon since the first of April in the preceding year and prior to the first of April in the current year, and add to or deduct from the assessment accordingly, setting down the amount of such change in a proper column in the assessment books. The value of lands and improvements shall be separately fixed, and shall in any assessment made hereafter be set down in separate columns in said assessor's books. The assessors shall not in any year, except the year of the quadrennial assessment, change the valuation of any real estate or improvements or the division thereof, except as above provided in this section."

The valuation placed upon the ground in 1923, the year of thé general assessment, remained unchanged during the three remaining years of the quadrennial period, and no complaint is made concerning it. The building was first assessed as of the first day of April, 1925, when it was substantially completed. Nothing in the assessment books shows that it was then incomplete. On April 1, 1926, the building was re-assessed as a whole. This assessment was not made on the basis of any change in or addition to the improvement, already assessed in 1925, but was intended as an original assessment. The improvement having been assessed in 1925, there was no authority to re-assess it, except, first, in a year of the general assessment, or second, in an intervening year by reason of damage to, an alteration in or addition to the improvement since the first day of April of the preceding year and prior to the first day of April of the current year. In the latter instance the assessor is required by section 14 to "add to or deduct from the assessment accordingly, setting down the amount of such change in a proper column in the assessment books." The year 1926, when the building was re-assessed as a

whole, was not a year of the general or quadrennial assessment. If any additions were made since April 1, 1925, which enhanced the value of the building, the amount or value of such additions was not set down in a proper column in the assessment roll, as required by the act. The board of assessors and the board of review have only such authority as is given them by statute. (*People* v. *Keogh,* 306 Ill. 323.) The re-assessment of the building as a whole in 1926, instead of fixing the value of the additions made since April 1, 1925, was a non-compliance with the provisions of section 14 and rendered void the increase in the valuation of the building as fixed in 1926 over the assessment of 1925. Moreover, after real property has been assessed and there has been no change in its physical condition, notice to the owner is jurisdictional and must precede a re-assessment of the same property in any intervening year. (*People* v. *Bender,* 330 Ill. 446; *People* v. *Shortall,* 287 id. 150; *People* v. *St. Louis Bridge Co.* 268 id. 477.) Such notice was wanting in the instant case.

The complaint made to the board of review concerning the assessment upon appellant's property and the hearing had upon that complaint were both without notice to the appellant. The assessment upon the building as fixed by the board of assessors in 1926 was reduced by the board of review, yet the assessment as so reduced was in excess of the last valid assessment made upon the building in 1925. Appellant's objection was directed to that excess, and the objection should have been sustained.

The judgment of the county court is reversed and the cause is remanded to that court, with directions to sustain appellant's objection.

*Reversed and remanded, with directions.*