**TUMULTY et al. v. DISTRICT OF COLUMBIA.**

No. 7061.

United States Court of Appeals for the District of Columbia.

Decided Jan. 16, 1939.

---

[1] D.C.Code, 1929, Tit. 18, Sec. 29, Act of March 3, 1921, 41 Stat. 1312, Ch. 125, Sec. 12.

[2] D.C.Code, Tit. 18, Sec. 26.

Paul E. Lesh, Hugh H. Obear, and Edmund D. Campbell, all of Washington, D. C., for appellants.

Elwood Seal, Corp. Counsel, and Vernon E. West, Principal Asst. Corp. Counsel, and W. H. Wahly, Asst. Corp. Counsel, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and ·MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia entered July 3, 1937, overruling exceptions of the appellants to, and confirming reports of the Auditor, as special master, which allowed the District of Columbia a preferred tax claim against the receivers of Wardman Real Estate Properties, Inc.

In the court below proceedings were had in two consolidated equity causes filed against Wardman Real Estate Properties, Inc. (hereinafter called the Company), for judicial foreclosure by sale of a mortgage in the form of a deed of trust, and to subject the unmortgaged assets of the Company to the claims of unsecured or general creditors. Julius I. Peyser and Joseph P. Tumulty were appointed receivers, and now hold approximately $200,000 in the receivership fund.

On April 19, 1933, the district court entered an order calling for. the filing of claims against the Company and against any funds in the hands of the receivers. The causes were referred to the special master, with directions, as to contested claims, to take testimony thereon and report the testimony to the court, together with his findings of fact and conclusions of law.

On June 30, 1933, the District of Columbia filed a claim for $19,316.23 for personal property taxes and penalties for the fiscal years ending June 30, 1928, 1929, 1930, 1931, and 1932, inclusive, against personalty contained in particular premises ·owned by the Company. On September 20, 1933, an amended claim for taxes without penalties in the sum of $52,956.20 ·was filed by the District. The last and finally amended claim for $52,956.20 with penalties in the sum of $39,516.53 was filed on November 7, 1933. On receiving this third claim, the special master reported to the court that. it should be granted· for $52,956.20 and should be given priority over the claims of the other creditors. This report was excepted to by the receivers, by Washington Properties, Inc., and by the District of Columbia. The receivers excepted upon the following grounds: That the assessments of taxes were not made by the board of personal property tax appraisers of the District of Columbia; that the assessments were not made against the Company, but against specific properties or "locations"; that no assessment was made against the Company by the board until after September 21, 1933; that such assessment was not made "without delay" within the meaning of the statute and was therefore void; that the District of Columbia could not in November, 1933, assess personal property of the Company except for "the then current year"; that the purported assessments made in 1933 for. the years 1928 to 1932, inclusive, were without warrant of law and void; and, that the board did not notify the Company of purported tax assessments against its property as required by law. Substantially these same exceptions to the special master's report were made by Washington Properties, Inc.

The basis of the District's exception was that the special master had omitted the claim for penalties for non-payment of taxes. On re-reference to the special master it was held that these penalties were valid claims, and the amount thereof, $39,516.53, was added to the $52,956.20 theretofore allowed, and given priority over other claims.

The record shows that the Company was incorporated under the laws of Maryland on June 22, 1928; that it acquired the several premises, Carlton Hotel, Wardman Park Hotel, 2700 Connecticut Avenue, Boulevard Apartments, Chastleton Hotel, Cathedral Mansions, Stoneleigh Court Apartments, and the personalty involved subsequent to July 1, 1928;[1] that

---

[1] The record recites and the special master found that the Company "acquired the chattels and personal property upon which the taxes herein claimed were assessed, by deed dated to wit; the 16th day of August, 1928, and recorded to wit; the 20th day of September, 1928." There is testimony to the effect that it

it operated these properties from October 2, 1928 to July 15, 1929; that on July 15, 1929, it leased these properties to Wardman Realty and Construction Company, and that company held these properties under this lease until February 28, 1931; that Wardman Realty and Construction Company made a management contract with United Realties, Inc., under which United Realties, Inc. operated the properties until it assigned its management contract to Hotels Management and Securities Corporation; that the lessee of the Company had no financial interest in United Realties, Inc., or Hotels Management and Securities Corporation; and, that on March 7, 1931, the lease to Wardman Realty and Construction Company was terminated as of February 28, 1931, and the properties turned back to the Company, which operated the properties itself from March 1, 1931, until the receivers were appointed July 14, 1931.

The claims of the District consisted of bills for taxes on personal property situated in the above described premises. No returns listing the property were made. The valuation was entered upon the field assessor's book by an inspector or assessor. The entries in the field book were reviewed by the board of personal tax appraisers, who by this review adopted the entries as assessments. Notice of assessments were addressed and mailed to the particular locations. Tax bills were sent to these locations. Later, assessments of some of these several properties were made against United Realties, Inc., or United Realty Company, and notice was given to it of assessment, and tax bills were mailed to it, but no proceedings were instituted to collect the tax. The record is not clear as to the assessment of the personalty contained in these several premises for each of the years involved. The personalty in the Carlton Hotel was assessed in the name of the Carlton Hotel and Carlton Hotel, Inc.; that in the Wardman Park Hotel was assessed variously, 2660 Woodley Road, Wardman Park Hotel, Wardman Park Hotel, Inc., and United Realty Inc.; that in 2700 Connecticut Avenue was assessed "Apartment House, 2700 Connecticut Avenue, N.W." and United Realties, Inc.; and that in Cathedral Mansions, 3000 Con-

necticut Avenue and 3100 Connecticut Avenue. The personal property in the Stoneleigh Court Apartments was assessed against Stoneleigh Court Apartments, Sheridan Pary Corporation, United Realty Company and Hotels Management and Securities Company. In the years, 1928, 1929, and 1930, all of this property was assessed against the particular premises in which it was located. In 1931 and 1932, an assessment was made against United Realties, Inc., for some of this property, the rest remaining assessed against the premises in which it was located. The record is not clear as to which was not assessed against this corporation. The special master found, and it is admitted by the District that for none of the years involved was there any assessment of the property made against the Company in any manner until after September 20, 1933, or that any notice of any purported assessment was ever given to the Company, affording it opportunity to be heard before the board of personal tax appeals. Subsequent to September 20, 1933, acting on advice from the office of the Corporation Counsel, the tax records were changed by naming the Company as owner of the personal property involved which constituted the assessment placed thereon by the District. This was the first time that the District had ever attempted to make assessments for personal property tax in a year subsequent to the year for which tax liability was claimed. This attempt is explained and justified by the order of the Corporation Counsel to make the change.

The District Court on July 3, 1937, ratified and confirmed these reports of the special master and overruled exceptions filed thereto by appellants. Whereupon this appeal, which relates solely to the claim of the District of Columbia for personal property taxes against the Company, was taken.

Under the taxing statute of the District of Columbia,[2] personal property taxes are assessed against "every *person, association, corporation, firm or company* [hereinafter referred to as person] *liable to taxation*", as of July 1st of each year. A printed blank schedule is available in the month of July and *every person liable*

---

acquired the property on October 2, 1928. The material fact is that the Company acquired all of this property subsequent to July 1, 1928, since it is ownership

upon that date which fixes tax liability for the fiscal year 1929.

[2] Tit. 20, D.C.Code 1929, § 751 et seq.

for personal property taxes is required to prepare and file a schedule of the personal property owned on that date, together with his address. Thereupon the board of personal tax appraisers, or any one of its members, shall assess the property at its fair cash value and the amount thus ascertained is entered upon the books for taxation for that fiscal year. If any person shall fail to make return of the required schedule in July, the board of personal tax appraisers shall *"without delay,* from the best information they can procure, make an assessment against such *person* * * * to which they shall add twenty percent thereof." (Italics supplied). If a return has been filed and the board is not satisfied as to its correctness, it may reject the return and assess the property in such amount as may to them seem just. Notice of the rejection of the sworn return shall be given to the *party interested* by leaving the same at his street address, whereupon there is a right of appeal from the appraiser's action to the board of personal tax appeals within 15 days.[3] This is the only power under the statute for the reassessment of personal property, except for particular personal property referred to in a later section.[4]

If property subject to taxes shall have been omitted from assessment the board of personal tax appraisers shall immediately proceed to assess the same for the then current year, giving notice in writing to the "persons or corporations so assessed" who shall have a right of appeal within ten days from the date of the notice. We quote sec. 769 in part:

"If, at any time within any current year, property subject to taxation under the provisions of this section shall have been omitted from assessment, said board of personal-tax appraisers shall immediately proceed to assess the same for the then current year, giving notice in writing to the *persons* or *corporations so assessed,* who shall have a right of appeal within ten days from date of said notice." (Italics supplied)

In aid of this duty to assess property omitted from assessment, there is statutory procedure for compelling the filing of a sworn return, when, from the best inform-

ation obtainable, a satisfactory basis for the assessment is not afforded. This certainly would secure the information needed by the taxing authorities when there is neglect or refusal to file a return as required by law, and particularly when such neglect or refusal runs over a period of years. We quote in part sec. 758:

"If any person neglects or refuses to file a return of personal property as required by law, and the assessor certifies to the board of commissioners that, in his opinion, the best information obtainable does not afford a satisfactory basis for assessment, the board of commissioners may, by petition to the Supreme Court of the District of Columbia for mandamus against such person, compel the filing of a sworn return, and in such case the court shall require the person at fault to pay all expenses of the proceeding."

The statute provides no lien against personal property for unpaid taxes, but sets forth clearly the procedure for the collection of such taxes. The taxes are to be collected under distraint proceedings, which are not limited to the personalty listed. The statute provides that "the collector of taxes * * * may distrain sufficient goods and chattels * * * belonging to the *person* * * * *charged* with such tax to pay the taxes remaining due * * * from such *person* * * * together with the penalty thereon and the costs that may accrue."[5] (Italics supplied) Thus it is observed that any goods and chattels of the person charged with the taxes may be distrained. The procedure for the collection of personal property taxes does not end with the subjection of personal property owned by the person charged with the taxes that may be found, but the statute empowers the collector of taxes to proceed against any parcel of land owned by the taxpayer, in the following words: "for want of such goods and chattels said collector of taxes may levy upon and sell at auction the estate and interest of such person * * * in any parcel of land in said District."[5]

Real property in the District is assessed in the name of the owner if known and, if not, it is assessed "owner unknown".[6] The assessment is passed upon by a board

---

[3] Tit. 20, D.C.Code 1929, sec. 753.

[4] Tit. 20, D.C.Code 1929, sec. 759. This section relates to the assessment of merchandise belonging to persons who enter the District subsequent to June 30th and establish a place of business for the sale of goods, wares, and merchandise either at private sale or at auction.

[5] Sec. 771.

[6] Sec. 696.

of equalization and review before which complaints made against the assessment may be lodged.[7] If the assessors "shall learn that any property liable to taxation has been omitted from the assessment for any previous year or years, or has been so assessed that the assessment was void, it shall be their duty at once to reassess such property for each and every year for which it has escaped assessment and taxation and report the same, through the assessor, to the collector of taxes, who shall at once proceed to collect the taxes." It is expressly, provided, however, that "no property which has escaped taxation shall be liable * * * for a period of more than three years prior to such assessment * * *".[8] The code provides for the sale of the real property subject to taxation on which said taxes are unpaid after the notice of sale and delinquent tax list shall have been advertised as required under the statute, and the redemption of the property so sold within two years.[9]

From this review of the statutes controlling the assessment of property in the District, it is very evident that Congress has outlined a different procedure for real and personal property. The personal property tax is a definite charge against the owner of the property and the real property tax is a definite charge against the property itself. These studied differences in method between real and personal property assessments were made, at least partially, because of the nature of the property to be taxed. Real property is permanent and lasting. The owner of real estate may be readily located by a search of the land records, but if not easily located, it is of little moment, for the property itself stands charged with the tax and may be levied upon. An unencumbered deed cannot be given, nor obtained, until the tax is paid.

. On the other hand, personalty, because of its mobility and the fact that a record title is not necessary, may change hands very quickly and often. Its very mobility, coupled with its lack of permanency, indicates the necessity of putting an added alertness in its assessment upon the taxing authorities. Thus, if a return is filed by a taxpayer, the board shall assess the property at its fair cash value. If the value declared by the owner does not satisfy the board as to its correctness, it may reject the return and thereupon assess the true value of the property; in which event the notice of rejection of the return should be given to the party interested by leaving the same at the address given in the return, whereupon the owner shall have a right of appeal to the board of personal tax appeals within 15 days after the notice of rejection. If no return is made, or if a return is made and property is not listed thereon, and the property is omitted from assessment, it must be assessed by the board within the current year with notice given in writing to the owner of the property so assessed, who shall have a right of appeal within 10 days from the date of the notice. The statute expressly limits the assessment in any event within the year, and puts the active duty upon the taxing authorities to see that the property is assessed properly. It is a rule without exception that if a property tax assessment is not properly made, there is no proper basis for a tax, and a tax attempted to be collected is void.[10]

It is conceded by counsel for the District that an assessment of personal property must be made against the person owning such property, but they contend that though the "assessment be made against an owner, it is not necessary that it be made in his name." We are unable to agree with this. It might well be argued in respect of real property, since, under the statute, it is the property itself that is liable for the tax. However, personal property, under the statute, must be assessed in the name of the owner else there is no one from whom, nor property permanently fixed against which, the tax may be collected. We point out that there is no provision in the statute for a lien on personal property for taxes;[11] that there

---

[7] Sec. 702.

[8] Sec. 706.

[9] Sec. 794.

[10] Note 12, infra.

[11] Congress, in the Revenue Act of 1937, Tit. 20, D.C.Code of 1929, Supp. III, sec. 965, subsec. 6, took notice of the problem of taxes on personalty and among other things provided a method for the obtainment of a lien against a taxpayer delinquent in the payment of personal property taxes. We quote:

"Sec. 6. In case of the neglect or refusal of any person to pay a personal-property tax within ten days after notice and demand, the collector of taxes, or the person designated by him, may file a certificate of such delinquent personal

is no provision of the statute to assess taxes on personal property where the owner is unknown; and, that there is no provision for the assessing of personal property taxes after the end of the current fiscal year.

We will separate the claims of the District into two groups, the liability of the Company (1) for 1928 and 1929; and (2) for the years 1930, 1931, and 1932.

(1) The special master held the Company liable for taxes on the property for the years 1928 and 1929 apparently for the reason "that at the date of the acquisition by the above named corporation [Company] of the * * * personal property, there were tangible and intangible personal property taxes for the tax years ending June 30, 1929, assessed against certain of the chattels and intangibles so acquired by said corporation [Company]."

The lower court in confirming the special master's report rendered judgment against the company for taxes in these two years. The District, in this court, confesses error in respect of this portion of the judgment. Its stated reason therefor is that the assessments for each of these years were made prior to the date the Company acquired the personal property involved. It now admits that the taxes assessed against the property cannot, by a transfer of name on the tax records, be assessed against the Company for 1928 and 1929. The District concedes error merely because of lack of ownership. We agree that the lack of ownership is conclusively shown, which in itself would not justify the tax, but there is a more controlling reason to deny tax liability for these years. There was not a valid assessment against the Company upon which the tax liability rests. When tax liability reaches a stage of finality under a valid

assessment, lack of ownership will not defeat the collection of the tax. Cf. People's Sav. Bank v. Layman, C.C., 134 F. 635, 640.

(2) For 1930, 1931, and 1932, it is the contention of the District that the property itself was assessed; that it is not property omitted from assessment; that the original assessments had not been completed by the board when, late in 1933, they completed the assessment by inserting the name of the Company as heretofore stated; that, discharging a function of government, the statute of limitation did not bar its claim; and, that the assessments are not subject to attack. The special master found that the addition of the name of the Company to the field assessor's books, the tax ledger and tax bills was a revision of the assessments made during the years involved.

We are unable to agree with the position of the District or the finding of the special master in this respect. It is fundamental to tax validity that there be a valid assessment.[12] We hold that there was no valid assessment against the company for these years.

It is shown by the record, found by the special master, and admitted by the District that the property was not assessed in the name of the Company, either in the field assessor's books or the tax ledgers until a date subsequent to September 20, 1933, nor did the Company's name appear on any tax records prior to September 20, 1933. It found its way to the tax records solely at the direction of the Corporation Counsel to add the name of the Company above each entry in the field assessor's books and tax ledgers where the property involved appeared at street address, hotel, apartment house, or in the name of another corporation.[13] It appears that for

---

tax with the clerk of the District Court of the United States for the District of Columbia, which certificate from the date of its filing shall have the force and effect, as against the delinquent person named in such certificate, of the lien created by a judgment granted by said court, which lien shall remain in force and effect until the taxes set forth in said certificate, with interest and penalties thereon, shall be paid and said lien may be enforced by a bill in equity filed in said court."

[12] George v. Mut. Investment & Agency Co., 8 Cir., 284 F. 681; Western Union Tel. Co. v. Howe, 8 Cir., 180 F. 44, 51; Security Trust & Savings Bank v.

Mitts, 220 Iowa 271, 261 N.W. 625; Lewis State Bank v. Bridges, 115 Fla. 784, 156 So. 144; State v. State Board of Equalization of Montana, 67 Mont. 340, 215 P. 667; Town of Albertville v. Hooper, 196 Ala. 642, 72 So. 258; City of Covington v. Carrol, Ky., 108 S.W. 295; In re Opinion of Justices, 55 Colo. 17, 123 P. 660; State ex rel. Ward v. Linney, 192 Mo. 49, 90 S.W. 844; City of Hannibal ex rel. Bassen v. Bowman, 98 Mo.App. 103, 71 S.W. 1122.

[13] When the District on September 20, 1933 filed its second claim for taxes due in the receivership proceedings, the receivers and Washington Properties, Inc.,

each of these years there was no return listing the property involved and that "from the best information obtainable" the board of personal tax appraisers, or some member of it, entered upon the field assessor's books the assessment against street address, hotel, apartment house, or in the name of another corporation. Thus it is clear that no assessment was made, or attempted to be made, against the Company until the above mentioned change of name on the tax records at the instance of the Corporation Counsel's office, and that such attempted assessment was a nullity and void.

Again we state that none of this property was assessed against the Company. It appears to have been assessed in part during the current fiscal years of 1931 and 1932 against United Realties, Inc. This part of the property was listed in its name on the tax records, field assessor's books, tax ledgers and tax bills. It was placed upon the field assessor's books by the board and notices thereof were served upon United Realties, Inc., of this assessment. This corporation did not appeal from this assessment at any time, thereby the tax for that part of the property became a final assessment against it. This part of the personal property was not omitted from assessment, and the tax liability of United Realties, Inc., as it appears from this record became final. Apparently it was not collected, but it cannot be said that the assessment against United Realties, Inc., was a liability of the Company or that it could be transferred to the Company. The record clearly discloses the fact to be that United Realties, Inc. (who later assigned the management contract to Hotels Management and Securities Company) was the managing agent of the Company's lessee, Wardman Realty and Construction Company, and the further undisputed fact, that the lessee had no financial interest in either United Realties, Inc., or Hotels Management and Securities Corporation during the life of the respective contracts. There is nothing in the record that indicates the Company had any interest in its lessee, or either of the managing companies, so there is no question involved herein that would indicate identity of interest, or the use of corporate entities for tax avoidance, or other improper purpose.

■■ The board of personal tax appraisers was fully authorized to list for taxation property omitted from assessment, when no return is filed, giving notice to the taxpayer of such assessment and an opportunity for hearing before the board of personal tax appeals. But it is a well-known rule of law that in the absence of statutory provision for reassessment for prior years, none can validly be made. Faced with a valid assessment, the action of changing the names of field books, tax ledgers and tax bills, instead of those originally found there, would, in fact, be a reassessment of property regularly assessed. When property has once been finally assessed it cannot be again assessed. Commonwealth v. Robinson, Norton & Co., 146 Ky. 218, 142 S.W. 406; City of Georgetown v. Graves' Adm'r, 165 Ky. 676, 178 S.W. 1035. It is not the policy of the law to favor reassessments. Unless the taxing statute expressly provides for a reassessment, such action is void. State v. April Fool Gold Min. & Mill. Co., 26 Nev. 87, 64 P. 3.[14] If the property has been validly assessed against its owner, the liability becoming final, there is no power in the statute for a revision of the assessment or the reassessment of the property. People's Sav. Bank v. Layman, supra.

The property which was not assessed regularly against United Realties, Inc., for these three years was not assessed against a person. If it were, it could not be reassessed under the authorities just cited. It appeared on the books in the name of street address, hotels and apartment houses. No claim is made and it does not appear that any of these hotels or apartment houses were persons as heretofore defined. The statute requires the assessment of personalty to be made against the person owning it. Hence this was an in-

objected to its allowance on the ground that the bills for taxes, on their face, did not show a claim against the Company. Leave to file an amended claim was granted after which the tax records were changed by the insertion of the name of the Company on the field assessor's books, tax ledgers and tax bills. The District admits that the name of the Company was merely added on the records; that no further assessment was made.

[14] People's Sav. Bank v. Layman, supra; People v. Sheridan-Brompton & Annex Bld'g. Corp., 331 Ill. 495, 163 N. E. 403; People ex rel. Glen Head Realty Co. v. Garland, 72 Misc. 413, 131 N.Y.S. 180.

valid assessment and a mere nullity.[15] Within the current year it could have been assessed against its owner as omitted property. No such assessment was made, and none attempted until the expiration of the last fiscal year, when subsequent to September 20, 1933, the attempt to assess it against the Company in the manner detailed took place. Such attempt did not create a tax liability against the Company. Holly Sugar Corp. v. Board of Com'rs, D.C., 10 F.2d 506.

 It is admitted that the Company at no time received notice of the omitted property assessments attempted to be made during the tax years involved, or notice of the attempted assessments subsequent to September 20, 1933. This is the omission of a vital step to a valid assessment. The Supreme Court of the United States has definitely declared that "the assessment of a tax is action judicial in its nature, requiring for the legal exertion of the power such opportunity to appear and be heard as the circumstances of the case require."[16] And that "before an assessment of taxes could be made upon omitted property, notice to the taxpayer with an opportunity to be heard, was essential, and that somewhere during the process of the assessment the taxpayer must have an opportunity to be heard, and that this notice must be provided as an essential part of the statutory provision, and not awarded as a mere matter of favor or grace."[17] The District contends that notice to the Company of the assessment was not provided for by the statute and not required to be given. If this be true, the statute runs counter to that due process of law essential to the validity of the tax claim and we would be compelled to hold it invalid because of its infirmity in this respect. Notice giving the taxpayer an opportunity to be heard is "essential" and such "notice must be provided as an essential part of the statutory provision and not awarded as a mere matter of favor or grace." However, we hold that the statute

provides that this notice must be given and thus an opportunity is presented to be heard in respect of the assessment of taxes upon omitted property. Sec. 769, supra. The admission of the District that no such notice of the assessments was ever given to the Company is fatal to the entire claim of the District, even though it had the power to assess the property for prior years, which, as we have held, it did not possess.

 We can not support the contention of the District that, as it was discharging a function of government in assessing this property, the statute of limitations is not a bar for assessment after the current year. Taxes are creatures of statute and must necessarily be collected in the manner provided by the statute. Bull v. United States, 295 U.S. 247, 259, 55 S. Ct. 695, 79 L.Ed. 1421; Liberty Mut. Ins. Co. v. Johnson Shipyards Corp., 2 Cir., 6 F.2d 752, 753; State v. St. Louis County Court, 13 Mo.App. 53; City of Carondelet v. Picot, 38 Mo. 125. Appellants and the District differ as to whether this action of the board of appraisers was taken under sec. 753 or sec. 769, but Mr. Willige, a member of the board of personal tax appraisers since 1926, stated, and the special master found as a fact, that the proceedings of the taxing authorities were under sec. 769, the omitted property section, with which finding we are in accord. In the present case, sec. 769 provides:

"If, at any time within any current year, property subject to taxation under the provisions of this section shall have been omitted from assessment, said board of personal-tax appraisers shall immediately proceed to assess the same for the then current year, giving notice in writing to the persons or corporations so assessed, who shall have a right of appeal within ten days from date of said notice."

As the language of this statute must control, we think that it was, and is, incumbent upon the taxing authorities in

[15] Note 12, supra.

[16] Davidson v. New Orleans, 96 U.S. 97, 24 L.Ed. 616; Weyerhaueser v. Minnesota, 176 U.S. 550, 20 S.Ct. 485, 44 L.Ed. 583; Hager v. Reclamation District, 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569.

[17] Central of Georgia Ry. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 51, 52 L.Ed. 134, 12 Ann.Cas. 463; Security Trust Co. v. City of Lexington, 203 U.S. 323,

27 S.Ct. 87, 51 L.Ed. 204; Londoner v. City and County of Denver, 210 U.S. 373, 385, 386, 28 S.Ct. 708, 52 L.Ed. 1103; Coe v. Armour Fertilizer Works, 237 U.S. 413, 425, 35 S.Ct. 625, 59 L. Ed. 1027; Turner v. Wade, 254 U.S. 64, 67, 41 S.Ct. 27, 65 L.Ed. 134; Holly Sugar Corp. v. Board of Com'rs, supra; Orcutt v. Crawford, 10 Cir., 85 F.2d 146, 149; Montana-Dakota Power Co. v. Weeks, D.C., 8 F.Supp. 935.

respect of omitted personal property to act within the current fiscal year. The statute is clear beyond doubt. And it is the construction that has been placed upon the statute by the District since its enactment, with this one exception, and therefore must unless it be plainly erroneous, receive due weight and consideration. It should not be disregarded by the court, except for cogent reasons.[18]

The District refers us to cases in which there was an assessment against the property of a corporation, which assessment was listed in the corporate name, the name being misspelled or part thereof omitted.[19] These cases hold that mistakes or omission of words in corporate names, if not misleading, do not vitiate the assessment. We have examined these cases and find that they are not applicable herein, but think it is quite evident that it is the holding in these cases which has beclouded the interpretation of the statute.

In these cases, the property involved is real property with a lien attached for the tax. It is the property which is assessed, not the owner. The assessment, being properly placed against the property, where it could not have misled, is not invalid. But in the case at bar, the statute provides for the assessment to be made against the person who owns the personalty. This was not done in the present case, and cannot now be done without express authority in the statute, which is lacking. Additionally, in none of the situations presented by these cases does it appear that the property had been omitted from taxation and a notice of a purported assessment mailed to a person other than the owner, as in the present case, but, on the contrary, the property was regularly assessed, although the wrong name was placed on the tax records. Perhaps the rule enunciated by these cases is a salutary one when real property is sought to be subjected to a proper tax. But it is a rule

that cannot be invoked to assess a tax on personal property which has accrued prior to the year in which the assessment is sought to be made, against an owner of omitted property, who was not properly assessed.

█ Counsel for the company and for the receiver contend that the assessments are invalid for the reason that the statute required the assessment of omitted property to be made by the board and that, in these instances, it was made by one assessor. We do not agree with this contention. We think that the method used would create a valid assessment if made against the owner of the property. We do not feel that the original entry of the omitted property being made by an inspector or assessor in the field book invalidates the assessment if it be an assessment against the owner of the property. We have seen that this entry is reviewed and ratified by the board, so we conclude that, under the statute and the practice for years,[20] the board, by such review and ratification of the original entry on the field books adopts such entry as the assessment, and properly assesses the property under either sec. 753 or sec. 769, in the event the required statutory notice is given, affording the owner of the property opportunity to be heard before the board of personal tax appeals. McCallum v. Board of Review, 178 Iowa 468, 159 N.W. 1036. See Illinois Central R. Co. v. Commonwealth of Kentucky, 218 U.S. 551, 31 S.Ct. 95, 54 L.Ed. 1147.

█ The District contends here that "the doctrine that tax assessments must be attacked through the machinery provided by the statute and are not subject to collateral attack" must control the disposition of this appeal. We are in accord with such principle of law, with the settled exception to the rule that a tax based upon a void assessment may be questioned or attacked wherever found. We think it

---

[18] United States ex rel. Wedderburn v. Bliss, 12 App.D.C. 485; United States v. Colegrove, 8 App.D.C. 255; Wilbur v. Texas Co., 59 App.D.C. 275, 40 F.2d 787, certiorari denied 282 U.S. 843, 51 S.Ct. 24, 75 L.Ed. 748; Kistler v. Burnet, 61 App.D.C. 135, 58 F.2d 687; Williams v. Burnet, 61 App.D.C. 181, 59 F.2d 357; District of Columbia v. Smith, 63 App.D.C. 363, 72 F.2d 735; U. S. ex rel. Sierra Land & Water Co. v. Ickes, 65 App.D.C. 375, 84 F.2d 228.

[19] The Alexandria Canal R. R. & Bridge Co. v. District of Columbia, 1 Mackey 217, 12 D.C. 217; Robinson v. Cook, 2 MacArthur, 191, 9 D.C. 191; O'Neal v. Va. & Md. Bridge Co. at Shepherds Town, 18 Md. 1, 79 Am.Dec. 669; Stevenson v. Henkle, 100 Va. 591, 42 S.E. 672; Thorndike v. Inhabitants of Camden, 82 Me. 39, 19 A. 95, 7 L.R. A. 463; People v. Blake, 72 Misc. 646, 132 N.Y.S. 191; Gratwick, Smith & Fryer Lumber Co. v. Village of Oscoda, 97 Mich. 221, 56 N.W. 600.

[20] Note 18 supra.

clear that all administrative remedies in matters of taxation must be exhausted before resort can be had to court action. Nelson v. First Nat. Bank, 8 Cir., 42 F.2d 30, but think it equally clear that when the assessment is *void*, the taxpayer may resort to equity for relief, without following statutory remedies. Particularly is this true, in a case like this, where the person now assessed never received notice of such attempted assessment giving it opportunity to appear before the board of personal tax appeals.[21] This is the rule as regards judgments,[22] and necessarily would control an assessment, which, while partaking of the nature of, does not possess the dignity of, a judgment. As we have shown, there can be no doubt that the tax claim in the present case was utterly void. It was void because there was not a proper assessment under the statute against the owner of the property, the Company. The District supports its contention by citing Stanley v. Board of Supervisors of Albany, 121 U.S. 535, 7 S.Ct. 1234, 30 L.Ed. 1000; Palmer v. McMahon, 133 U.S. 660, 10 S.Ct. 324, 33 L.Ed. 772, and McLeod v. Receveur, 7 Cir., 71 F. 455. In the two latter cases, the taxpayer appeared before the proper administrative tribunal to question the correctness of the tax and allowed the administrative proceeding to become final against him, while in the Stanley Case there was an assessment made which was valid in part. The holding in each of the cases was to the effect that, unless the tax claims were void, they were not subject to later collateral attack. In the present case a tax claim, based upon an invalid assessment, was filed in a receivership case. As this claim was void, it was properly attacked as filed, that is, in the receivership case. Of course, if the assessment had been valid, it could not have been attacked in the receivership case, but would stand as a previously confessed judgment, not subject to collateral attack.

A tax to be valid depends upon a particular statute creating liability and upon the proper procedural steps being taken by the taxing authorities. It is fundamental that an assessment must be validly made before tax liability can possibly accrue to the taxpayer. The instant statute recognizes an assessment of personal property against the person owning it on July 1 in each year. The assessment must be made within the current tax year. There are no powers in the instant statute for revision or reassessment of personalty after expiration of the current tax year.

In our opinion the order of the district court should be and is reversed and the cause remanded for further proceedings consistent herewith.

[21] Singer Sewing Mach. Co. of New Jersey v. Benedict, 8 Cir., 179 F. 628, 629; Rockefeller v. O'Brien, D.C., 224 F. 541, affirmed 6 Cir., 239 F. 127; Fordson Coal Co. v. Maggard, 6 Cir., 2 F.2d 708; Connecting Gas Co. v. Imes, D.C., 11 F.2d 191; Pleasant et al. v. Missouri-Kansas-Texas R. Co., 10 Cir., 66 F.2d 842; Chicago & N. W. Ry. Co. v. Bauman, 8 Cir., 69 F.2d 171, 172;

Security Trust & Sav. Bank v. Mitts, supra, note 12; State Board of Tax Com'rs v. McDaniel, 199 Ind. 708, 160 N.E. 347.

[22] Clark v. Wells, 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138; U. S. v. Walker, 109 U.S. 258, 3 S.Ct. 277, 27 L.Ed. 927; Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914; Missouri v. Title Guaranty & Surety Co., 8 Cir., 72 F.2d 595.