## PAUL MARTIN CO., Inc. v. SUMPTER.
### No. 756.

Municipal Court of Appeals for the
District of Columbia.
March 2, 1949.

I. Irwin Bolotin, of Washington, D. C., (M. Taft Woodruff and Denver H. Graham, both of Washington, D. C., on the brief), for appellant.

Arthur L. Willcher, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant sued appellee for an alleged unpaid balance arising out of a series of transactions whereby appellant delivered certain articles of women's clothing to appellee. Appellant claimed the transactions were sales. Appellee alleged that the goods were delivered on "consignment" and were to be paid for only when resold by her at retail. An offer to return the unsold goods was made prior to trial, but such offer was rejected by appellant. The trial court held for appellee on the ground that appellant had not proved sales by the preponderance of the evidence; this appeal followed.

In September 1947 appellee was just beginning the business of retailing women's ready-to-wear clothing in Washington. A salesman for appellant, a wholesale dealer in women's clothing, located in Baltimore, obtained a small order from appellee. This merchandise was shipped and received on a C.O.D. basis. Later appellant's president,

Strauss, visited appellee in her shop. After making suggestions to appellee that her business needed a larger stock and being told that her funds were limited, he invited her to visit his store in Baltimore. Appellee, with her brother-in-law, went to Baltimore in October 1947 and dealt with Strauss. According to her testimony, she told him that she was not very familiar with merchandising methods, and he proceeded to point out various methods of tagging, pricing and displaying her merchandise. He then made selections from his stock, setting aside various items which he considered suitable for her class of business. Her testimony was that she tried to inform him of her limited finances, and he told her "to forget the money." After the selections were made, she testified he said, "Each week what you have sold, you send me a check for that amount." She was surprised, and said, "to show you my appreciation, I am going to give you all the money I have." Thereupon she paid him $150, and on the same day two shipments were sent her representing a total wholesale price of $1,009.25.

Subsequently one additional small shipment representing a wholesale price of $21.50 was sent to her. Beginning a few days after receipt of the shipment and continuing for several months, appellee sent weekly checks to appellant each check being accompanied by a letter itemizing the stock numbers, colors, sizes, and prices. Each payment represented the wholesale price of the goods sold by her during the preceding week. No accounting was made and none was asked for as to the retail price charged and received by appellee.

On December 30, 1947, a telegram was sent to appellee demanding $100 immediate payment. Other notices and monthly statements were sent to appellee. She testified that during a personal conversation at her shop Strauss told her to disregard these statements as they were mere office routine. In February 1948 appellee was notified by a collection agency that they had been engaged to collect the account. She informed the agency that the merchandise had been delivered "on consignment." Correspondence ensued between the parties and suit was filed April 2, 1948. During all these negotiations and even after suit was filed appellee continued to remit the wholesale price of each article as goods were sold. Payments proffered subsequent to the suit were refused and the checks returned to appellee's attorney.

The invoices accompanying the goods contained the provision "Terms, 8/10 EOM," which Strauss testified he had explained to appellee and meant that an 8% discount would be allowed if the bill was paid before the 10th of the month following the transaction. He also said that this meant that the goods were to be paid for by the 10th of the month after the sale and that this represented the usage of the trade. Appellee denied knowing of any such usage and also denied that the goods had been sold to her upon such basis. She admitted that the word "consignment" had not been used in her talks with Mr. Strauss, but testified that she had begun using that phrase in connection with the transaction after being told by a relative that her method of dealing with appellant constituted "sales on consignment."

The trial court weighed appellant's contention that the transactions constituted absolute sales and the argument of appellee's counsel that "consignments" were involved and held that the evidence "discloses characteristics and features of both a sale and a consignment or bailment, but it is also lacking more satisfactory testimony on both these issues." The trial court concluded that appellant had not carried the burden of proving that the transactions constituted absolute sales, and hence gave judgment for appellee.

We have concluded that there was no evidence that the transactions constituted so-called "consignments", but on the contrary that even if the description of the transactions testified to by appellee is accepted as true, the transactions were absolute sales. If a contract under which personal property is delivered to another permits him to sell the same at retail, at prices fixed by himself, and to retain the proceeds, his only obligation being to pay for the property as and when sold at prices

fixed by the contract, it is not one of "consignment" but of "sale."[1]

"A contract constitutes a sale when the consignee agrees to pay a certain price for consigned goods as he sells them and there are no restrictions or limitations imposed upon his right to sell the goods or as to the price on a sale by him notwithstanding the contract contains a clause giving the consignee the right to return unsold goods."[2]

Here there was no testimony whatever that the wholesaler claimed or exercised any control over the price at which the retailer sold the goods, or that the wholesaler retained title. Admittedly, according to appellee's own testimony, the price charged her for each article was fixed in advance and had no necessary relationship to the price charged by her at retail. Admittedly also, the wholesaler retained no control over the method of display and retained no interest in the retail price except to obtain the wholesale price.

■■ It does not follow, however, as a matter of law that appellant was entitled to recover the price of the goods at the time suit was brought. While under the Uniform Sales Act, in effect in the District of Columbia, delivery of goods and payment of the price are ordinarily concurrent conditions, yet the Act recognizes that parties may make any terms they will.[3] Here the version of the transaction given by each of the parties was that the sales were made on credit and the only difference related to the terms of such credit. The rule is that until the term of the credit has expired the buyer is not obligated to pay.[4] It was appellee's testimony that this credit was to continue so long as each dress or other article remained unsold. She testified further that she was continuing to try to sell the goods, although she was having difficulty because the length of women's dresses changed within a month after the original sale. It was admitted that she made some sales after suit was brought and made remittances to appellant accordingly.

■ Under appellee's interpretation of the contract, therefore, she would have the right to keep the goods indefinitely without paying for unsold items. It is not often, however, that a promise will properly be interpreted as calling for perpetual performance.[5] "More commonly the true interpretation will mean some period short of infinity; and partly in order to carry out supposed actual intention of the parties and partly, doubtless, in order to prevent an offer or agreement from being ineffectual because too indefinite, courts will, where the contract contemplates a single act or exchange of acts, unless the circumstances show a contrary intention, interpret a promise which does not in terms state the time of performance as intending performance in a reasonable time." [6]

■ We conclude, therefore, that the case should be remanded for a new trial with instructions to the trial court to construe the transactions between the parties as sales and to determine as questions of fact whether appellant's or appellee's version of the time for payment is to be accepted and also, if appellee's version is accepted, whether, under all the circumstances of the case, a reasonable time for the payment for the goods had expired when suit was commenced. If such a reasonable time had not expired, then the suit should be dismissed as premature, with the right to renew it at a later date.

[1] In re United States Electrical Supply Co., D.C.S.D.Ill., 2 F.2d 378, and cases there cited; cf. Scott County Milling Co. v. Grayson, 5 Cir., 88 F.2d 190; United States v. City and County of San Francisco, D.C.N.D.Cal., 23 F.Supp. 40, affirmed 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050, rehearing denied 310 U.S. 657, 60 S.Ct. 1071, 84 L.Ed. 1420.

[2] 46 Am.Jur., Sales § 484.

[3] Code 1940, 28—1302; 2 Williston, Sales § 448.

[4] Tatum v. Ackerman, 148 Cal. 357, 83 P. 151, 3 L.R.A.,N.S., 908, 113 Am.St. Rep. 276, 7 Ann.Cas. 541; Bates-Street Shirt Co. v. Place, 76 N.H. 448, 84 A. 47; 46 Am.Jur., Sales § 190.

[5] Holt v. St. Louis Union Trust Co., 4 Cir., 52 F.2d 1068; 1 Williston, Contracts § 38.

[6] 1 Williston, Contracts § 38, and cases there cited.

Reversed .with instructions to award a new trial in accordance with this opinion.