**DISTRICT OF COLUMBIA, Petitioner,**

v.

**Lambert KING and Harry Bartz, t/a Bartz & King, a partnership, Respondents.**

**No. 13474.**

United States Court of Appeals District of Columbia Circuit.

Argued March 11, 1957.

Decided March 28, 1957.

Mr. George F. Donnella, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Leo J. Ehrig, Jr., Asst. Corporation Counsel, were on the brief, for petitioner. Messrs. Vernon E. West, Corporation Counsel at the time record was filed, and Henry E. Wixon, Asst. Corporation Counsel, also entered appearances for petitioner.

Mr. Edgar J. Goodrich, Washington, D. C., with whom Messrs. Jerome J. Dick and George Herbert Goodrich, Washington, D. C., were on the brief, for respondents.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The District of Columbia asserted a deficiency assessment against appellees, retail jewelers, for the years 1953, 1954 and 1955 for failure to include in personal property tax returns [1] about three-quarters of the merchandise in appellees' store. The Taxpayers included in their return one-quarter of their stock in trade which they owned absolutely, but did not include the other three-quarters made up of merchandise sent on a "memorandum" arrangement [2] which enabled Taxpayers to display the merchandise, hold it out for sale, sell it and transfer title to a purchaser. Occasion-

---

1. D.C.Code 1951, §§ 47–501, 47–1202 et seq. (Supp. V, 1951 Ed.).

2. A typical memorandum provides:
   "The goods described and valued as below are delivered to you for *examination*

ally Taxpayers would specially order from a supplier such items as expensive diamond bracelets or necklaces which were not displayed but were kept in a vault until the particular customer for whom they were ordered came in to view them.

The memorandum referred to purported to place jewelry in the hands of the Taxpayers "for examination and inspection only" and was in fact subject to recall at all times but the record discloses that for all practical purposes the jewelry so received was treated and handled the same as that which Taxpayers owned absolutely. The memorandum prohibits sales or pledges but in practice it is conceded that a purchaser who bought memorandum merchandise was never aware of any limitation and that Taxpayers could and did transfer valid legal title upon delivery and only notified the supplier *after* the sale was consummated. The sale was in each case a sale by Taxpayers for their own account and not for the account of the supplier or as agents for the supplier.

The merchandise covered by this memorandum arrangement with various suppliers was described by the Taxpayers in testimony as "consigned" merchandise and carried in inventories entitled "Inventory of Consigned Merchandise."

Appellant contends that the statute [3] by its very terms empowers assessment of *all* merchandise included in the stock in trade of the dealer and ownership of the merchandise by the dealer is not essential.

Taxpayers urge that they are not required to pay tax on any merchandise except that which they own absolutely and in their own right.

The Tax Court held that as to merchandise held under the memorandum arrangement the Taxpayers were not subject to tax except as to such merchandise as was actually sold.

We view the Taxpayers' operations as dealing with three categories of merchandise:

1. Merchandise purchased by Taxpayers for resale and owned absolutely by Taxpayers.

2. Merchandise held by Taxpayers under Memorandum arrangement which permitted them to display and hold it out for sale and transfer valid legal title to a customer upon delivery without prior approval of the legal owner or supplier.

3. Merchandise specially ordered by Taxpayers for the account of or for showing to an identified customer and which if not sold is returned to the supplier promptly on learning that the customer will not buy it.

In our view the controlling statute levies a tax not on title but on the merchandise which is the "stock in trade." This statute, D.C.Code 1951, § 47–1212, provides:

"Dealers in general merchandise of every description shall pay to the collector of taxes of the District of Columbia one and one-half per centum on the average stock in trade for the preceding year."

D.C.Code 1951, § 47–1203 provides for the listing and assessment of " * * * all general merchandise or stock in trade, *owned or held in trust or otherwise * * *"* [4] which was subject to taxation under subsequent sections including section 47–1212. If "stock in

---

and inspection only and are the property of [name of supplier], and subject to their order and shall be returned to them on demand. Such merchandise, until returned to them and actually received, are at your risk from all hazards. *No right or power is given to you to sell, pledge, hypothecate or otherwise dispose of* this merchandise regardless of prior transac-

tions. A sale of this merchandise can only be effected and the title will pass only if, as and when the said [name of supplier] shall agree to such sale and a bill of sale rendered therefore."

3. D.C.Code 1951, § 47–1212 (Supp. V, 1951 Ed.).

4. Emphasis added.

trade", includes only those goods owned outright, the statutory reference to merchandise "held in trust or otherwise" would be superfluous.

■ The evidence is conclusive that for every practical purpose the general memorandum merchandise was indistinguishable from that absolutely owned by Taxpayers. They spoke of it and listed it as "consigned merchandise" in their stock in trade. While it was subject to recall and control of the supplier as legal owner, the Taxpayers were able to and did deal with it as their own and passed title on delivery without prior consent or approval of the supplier. We think it is plainly part of the "stock in trade" of Taxpayers. This disposes of the second category described.

■ The third category is less precise in the record. That category might be called merchandise on "special memorandum." Where such merchandise is specially requested by Taxpayers for an identified customer for showing, and returned promptly if not sold, without displaying it or holding it out for sale to others or soliciting others to buy it, we think it does not become part of the "stock in trade" even though it might be said in a broad sense to be "held in trust." Such specially ordered items are distinguishable from the "memorandum" merchandise generally in several respects; they are not held out for sale or displayed for sale to the customers, but are in Taxpayers' possession for a limited time and for a limited and stated purpose. Modern merchandising depends to a large extent on customers seeing adds for or the physical merchandise itself, and after seeing it, wanting it. This third class of merchandise, which is specially ordered in response to a special need or demand, however, is kept in the vault or safe and brought out only upon appointment with the particular customer whose presumed wants or needs led Taxpayers to secure it from the supplier or suppliers. If the records and practice

of the Taxpayers identify the segregated merchandise, the prospective buyer for whom ordered, and show prompt return of the merchandise after knowledge that a sale will not develop and an absence of sales solicitation of other prospects, we think the merchandise does not become part of the stock in trade and does not acquire a tax situs in the District of Columbia under the statutes.[5]

Reversed and remanded for further proceedings not inconsistent herewith.

5. The Tax Court holds such property subject to tax *if sold* and there is no appeal from that part of the Tax Court's determination.