**DISTRICT OF COLUMBIA,**
Appellant,

v.

**POWERS GALLERY, INC.,**
Appellee.

No. 8041.

District of Columbia Court of Appeals.

Argued June 27, 1974.

Decided April 4, 1975.

Melvin J. Washington, Asst. Corp. Counsel, Washington, D. C. with whom C. Francis Murphy, Corp. Counsel, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Alvin B. Davis, Washington, D. C. with whom James J. Bierbower, Washington, D. C., was on the brief, for appellee.

Before REILLY, Chief Judge, KELLY and FICKLING, Associate Judges.

KELLY, Associate Judge:

The District of Columbia appeals from a ruling of the Tax Division of the trial court holding that art objects held on consignment by appellee Powers Gallery, Inc. (Gallery) are not part of the Gallery's "stock in trade" subject to a personal property tax under D.C.Code 1973, § 47–1212.

The pertinent facts are that in the year in question appellee operated an art gallery at 3233 P Street, N.W. in the District of Columbia in which a number of the paintings, drawings, etchings, and sculptures which it offered for sale were received on consignment from individuals, businesses, and other galleries. In fiscal year 1971, the Gallery's tangible personal property had an average value of $122,624 per month and the combined monthly average insurance value of consigned objects was $117,877. The District treated all of the Gallery's art objects, owned and consigned, as stock-in-trade under § 47–1212 and assessed a deficiency in personal property tax against the Gallery of $2,942.98,[1] plus

---

1. The tax was assessed according to a formula employed by the District which resulted in the Gallery's paying taxes on $110,442 worth of consigned art.

an interest penalty of $235.44; a total of $3,178.42. Most of the consigned items held for sale during fiscal 1971 were returned unsold to the consignors.

The Gallery paid the assessment and sought a refund, which was denied. It then appealed to the Tax Division of the trial court, which ruled that the tax was improperly imposed and ordered the refund of $3,178.42 to the Gallery, with interest. The court regarded the lack of any incidents of ownership of the property as warranting relief from the tax. It found that the arrangement was a bailment with the Gallery.

The District argues, in general, that all tangible personal property consigned for purposes of sale is taxable stock-in-trade in the hands of the consignee. The Gallery's position is that personal property can only be taxed to its owner.

The District cites District of Columbia v. King, 100 U.S.App.D.C. 142, 243 F.2d 248 (1957), as controlling the issue on appeal. In *King* it was established that for a period of three years some merchants failed to include in their inventory approximately three quarters of the merchandise [jewelry] in their store. The excluded merchandise was held under a memorandum stating that the goods were delivered for examination and inspection only, were the property of the supplier, and were not to be sold without the consent of the supplier. In practice, however, sales were made without consultation with the supplier. The District of Columbia Tax Court found that the taxpayers set their own price for an item and sold it to the customer at that price, then remitted the amount stated in the memorandum as the value of the item sold. No commission was ever contemplated or charged. Thus, "[i]n essence, the [jewelers] bought the article from the supplier and in turn sold it at a profit to the customer."[2] The United States Court of Appeals for the District of

Columbia Circuit held that the jewelers made sales for their own account. It found that the jewelry held under the memorandum was "treated and handled the same as that which Taxpayers owned absolutely. . . .", District of Columbia v. King, *supra* at 143, 243 F.2d at 249, and that they dealt with it as their own. *Id.* at 144, 243 F.2d at 250. On the basis of these findings the court concluded that the "memorandum" merchandise was stock-in-trade.

In the present case, in contrast, each of the consigned articles was held by the Gallery under a contract of consignment in which a retail price was set after consultation with and agreement of the consignor, and the amount of the Gallery's commission was stipulated. An unsold item was to be returned to the consignor and the Gallery received nothing except reimbursement for any extraordinary expenses it incurred. Items consigned were regarded by the president of the Gallery and by the parties dealing with the Gallery as belonging to those who had consigned them. Consignors could recall the items thirty days before the termination of the consignment agreement or any time thereafter upon thirty days' notice.

It is said that ". . . 'consignment' does not imply a sale. The very term imports an agency, and that the title is in the consignor". Terminal Warehouse & Refrigeration Co. v. Cross Transp. Co., D.C.Mun.App., 33 A.2d 617, 619 (1943) (footnote omitted). A consignment does not exist (and a sale take place) where ". . . a contract under which personal property is delivered to another permits him to sell the same at retail, at prices fixed by himself, and to retain the proceeds, his only obligation being to pay for the property as and when sold at prices fixed by the contract . . . ." Paul Martin Co. v. Sumpter, D.C.Mun.App., 64 A.2d 425, 426–27 (1949). These features

---

2. King and Bartz v. District of Columbia, D.C.Tax Court, Docket No. 1504, May 2, 1956, "Findings of Fact and Opinion" at 6.

which distinguish a consignment from a sale were present here. An agency relationship existed between the Gallery and its consignors. Control of the art works remained with the original owners who could recall the items. Their consent was necessary to set the retail prices and the Gallery received a fixed commission, not a profit, on the sales.

■ The *King* case does not hold that consigned goods as such are included in the category of stock-in-trade under § 47–1212, as the jewelry there in question was regarded as owned, as a practical matter, by the retail dealers (*i. e.* the taxpayers) in possession thereof. Nor does that decision hold that all merchandise in the possession of a merchant for the purpose of sale is stock-in-trade, for the court found that merchandise that was specifically ordered by the merchants for identified customers was not subject to the personal property tax if unsold to such customer and returned to supplier. District of Columbia v. King, *supra* at 144, 243 F.2d at 250.[3] Thus the case does not stand for the proposition, urged by appellant, that stock-in-trade consists of all the goods and products a dealer has on hand which are customarily sold by him no matter how the merchandise was obtained. It does hold that stock-in-trade encompasses more than goods owned outright, but this holding does not embrace the appellee here. The memorandum agreement in *King* did not describe the true relationship of the parties, so the court looked through the agreement and found the jewelry was taxable as the personal property of the taxpayers. The government here does not suggest that the consignment arrangements of the Gallery were anything other than what they purported to be: transactions in which the Gallery was given possession of the items for the limited purpose of sale only and never obtained ownership of them or in any way treated them as their own property.[4]

■ Appellee contends that the consigned art objects in the instant case cannot be considered stock-in-trade unless it owned them and we agree. Contrary to the position of the District, ownership is the criterion on which the tax is based. Congressional intent as shown by the legislative history of the statute was to tax the owner. As expressed by Congressman Rucker of Missouri:

> The tax most certainly should be levied upon what a man has and not upon what he has not. It should be assessed against the owner of the property. 35 Cong.Rec. 4904 (1902).

Subsequently, decisions in this jurisdiction reiterated the principle that the burden of paying a personal property tax falls upon the owner of such property. In the case of Tumulty v. District of Columbia, 69 App.D.C. 390, 102 F.2d 254 (1939), the District claimed personal property taxes and penalties for five preceding years on personalty contained in several apartment and hotel properties. During those five years it had made some assessments against the company managing the buildings and some against the premises in which the personalty was located. The court held the assessments should have been made against the owner of the property (*id.* at 397, 102 F.2d at 261) and since they were not, the assessments were invalid (*id.* at 395, 102 F.2d at 259) and the tax attempted to be collected was void (*id.* at 397–98, 400, 102 F.2d at 261–62, 264). The court stated:

> The personal property tax is a definite charge against the owner of the property

---

3. The status of these items is not specified by the Court of Appeals, but the Tax Court regarded them as articles owned by the supplier. King and Bartz v. District of Columbia, *supra* note 2 at 7–9.

4. The fact that the Galley could pass legal title to the consigned items sold cannot be regarded as an incident of ownership. As one entrusted with goods, it must perforce pass legal title to good faith purchasers under D.C.Code 1973, § 28:2–403(2).

[while] the real property tax is a definite charge against the property itself.

. . .

.    .    .    .    .    .

[P]ersonal property, under the statute, must be assessed in the name of the owner else there is no one from whom, nor property permanently fixed against which, the tax may be collected. . . . [*Id.* at 395, 102 F.2d at 259.]

The court interpreted the *entire* personal property taxing statute, what was then D. C.Code 1929, § 20–751 et seq., and is now D.C.Code 1973, § 47–1201 et seq., as requiring personal property to be assessed against its owner.

The statute requires the assessment of personalty to be made against the person owning it. . . . [*Id.* at 397, 102 F. 2d at 261.]

Although the case dealt with personal property situated on rental and business premises, the court remarked in a footnote that D.C.Code 1929, § 20–759, a predecessor of the section at issue here, D.C.Code 1973, § 47–1212, " . . . relates to the assessment of merchandise *belonging* to persons who enter the Di*....*ct subsequent to June 30th and establish a place of business for the sale of goods, wares, and merchandise either at private sale or at auction." *Id.* at 394 n. 4, 102 F.2d at 258 n. 4 (emphasis added).

The approach toward the personal property tax statute taken in *Tumulty* was restated with approval in Brown v. Collector of Taxes for District of Columbia, 101 U. S.App.D.C. 200, 203, 247 F.2d 786, 789 (1957): "We have previously pointed out that the personal property tax is a definite charge against the owner of the property. . . . "

█ The art objects consigned to the Gallery, then, did not constitute stock-in-trade so as to be taxable to the Gallery under D.C.Code 1973, § 47–1212. As the tax

on the average stock-in-trade of dealers in general merchandise was repealed, effective July 1, 1974 (D.C.Code 1973, § 47–1207), this issue will no longer arise.

Affirmed.